UNIVERSITY OF TEXAS MEDICAL SCHOOL AT HOUSTON, John C. Ribble, M.D., and M. David Low, M.D., Petitioners,

v.

Allan THAN, Respondent.

No. 94–0465.

Supreme Court of Texas.

Argued Jan. 3, 1995.

Decided June 22, 1995.

**928**

James C. Todd, Dan Morales, Leo L. Barnes, Austin, for petitioners.

Bruce A. Coane, Joyce A. Keating, Houston, for respondents.

ENOCH, Justice, delivered the opinion of the Court, in which all Justices join.

This case concerns the procedural due process, if any, that must be afforded to a graduate student who is dismissed from a state university. The trial court found that the student's due course of law rights had been violated and granted the student a permanent injunction. The court of appeals affirmed. 874 S.W.2d 839. For the reasons expressed below, we affirm the permanent injunction as modified.

Allan Than, a medical student at the University of Texas Medical School at Houston, was dismissed for academic dishonesty. As a third year student, Than took the National Board of Medical Examiners (NBME) exam in surgery on February 22, 1991. During the exam, two proctors observed Than repeatedly looking at the answer sheet of another student. The proctors were instructed by Dr. Margaret McNeese, an associate dean of UT, to either pull Than's test or to move one of the students. Before the proctors could do either, however, the student from whom Than was allegedly cheating finished the exam and left the room. Perceiving that the threat of cheating had dissipated, and rather than disrupt the remaining students who were still taking the test, the proctors opted not to pull Than's exam and allowed him to complete the exam.

Shortly after the exam, UT requested the NBME to prepare a statistical analysis of Than and the other student's exam. The NBME compared joint wrong answers, that is, the common questions that both students answered incorrectly. Of these wrong answers, the students gave the same wrong answer on 88% of the questions.

Upon receiving the NBME's statistical analysis, UT instituted disciplinary proceedings against Than for academic dishonesty. UT gave Than oral and written notice of the charges against him, including notice of some of the evidence to be used against him at the hearing. At the hearing, Than opted to represent himself. UT was represented by Dr. McNeese. Both made opening and closing statements. UT called the two proctors as witnesses and Than extensively cross-examined them. Than called two students who had taken the same exam to testify on his behalf. After the conclusion of the hearing, the hearing officer viewed the testing room with Dr. McNeese. Although Than asked, he was not permitted to accompany them to the testing room. On the hearing officer's recommendation, Than was expelled for academic dishonesty.

Than retained legal counsel and appealed his dismissal to Dr. David Low, the president of the medical school. Dr. Low upheld Than's dismissal. Than filed this action alleging that UT had violated his right to procedural due process under the due course of law guarantee of the Texas Constitution. TEX. CONST. art. I, § 19. Than obtained a temporary injunction requiring UT to permit him to complete his medical education; the court of appeals affirmed. *University of*

*Texas Medical School v. Than,* 834 S.W.2d 425, 432 (Tex.App.—Houston [1st Dist.] 1992, no writ). When UT refused to provide Than a certificate necessary for him to participate in a residency program, the trial court found UT in contempt of the temporary injunction. UT sought mandamus relief and a stay of the trial court's contempt order. This Court granted the stay on July 1, 1992. *University of Texas Medical School v. O'Neill,* 35 Tex. Sup.Ct.J. 990 (July 1, 1992). We denied UT leave to file the petition for writ of mandamus and lifted the stay on December 31, 1992. 36 Tex.Sup.Ct.J. 386 (December 31, 1992).

In January 1993, the trial court granted Than a permanent injunction ordering UT to: (1) change Than's failing grade on the surgery exam to a "B"; (2) remove from Than's school records all references to his expulsion and all documents concerning the charges against him, the investigation, recommendation, hearing and appeal; (3) treat Than as a student who graduated in good standing; and (4) issue Than a diploma and all certificates necessary for his participation in any post-graduate residency program. We agree that Than was not afforded adequate procedural due process before his expulsion and is entitled to a new hearing on the charge of academic dishonesty. We affirm the permanent injunction, but as modified.

## I.

■ The due course of law guarantee of the Texas Constitution provides:

No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

TEX. CONST. art. I, § 19. The Texas due course clause is nearly identical to the federal due process clause, which provides:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; . . .

U.S. CONST. amend. XIV, § 1. While the Texas Constitution is textually different in

that it refers to "due course" rather than "due process," we regard these terms as without meaningful distinction. *Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249, 252–53 (1887). As a result, in matters of procedural due process, we have traditionally followed contemporary federal due process interpretations of procedural due process issues. *Mellinger,* 3 S.W. at 252–53; *see also Spring Branch Indep. Sch. Dist. v. Stamos,* 695 S.W.2d 556, 560–61 (Tex.1985); *Tarrant County v. Ashmore,* 635 S.W.2d 417, 422–23 (Tex.), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 606 (1982); *House of Tobacco, Inc. v. Calvert,* 394 S.W.2d 654, 657–58 (Tex.1965); *Great Oaks Util. v. City of Houston,* 161 Tex. 417, 340 S.W.2d 783, 784 (1960). Although not bound by federal due process jurisprudence in this case, we consider federal interpretations of procedural due process to be persuasive authority in applying our due course of law guarantee.

■ Our review of Than's due course claim requires a two-part analysis: (1) we must determine whether Than has a liberty or property interest that is entitled to procedural due process protection; and (2) if so, we must determine what process is due. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

## II.

■ The requirements of procedural due process apply only to the deprivation of interests protected under Article I, Section 19. Both UT and Than assume that Than has a protected liberty or property interest in continued graduate education at a state-supported university. However, UT invites this Court to conclude otherwise.

■ In defining the scope of protected liberty interests under the Fourteenth Amendment, the United States Supreme Court has stated that a liberty interest:

[D]enotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire use-

ful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of one's own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.

*Roth,* 408 U.S. at 572, 92 S.Ct. at 2706–07 (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). Moreover, where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, the minimal requirements of due process must be satisfied. *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975); *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. Thus, where high school students were suspended from school for 10 days based on charges of misconduct, the school's unilateral suspension was found to deprive the students of a liberty interest in their standing with fellow students and their teachers and for later opportunities for higher education and employment. *Id.* at 575, 92 S.Ct. at 2708.

A medical student charged with academic dishonesty faces not only serious damage to his reputation but also the loss of his chosen profession as a physician. *See* Seavey, *Dismissal of Students: "Due Process."* 70 HARV.L.REV. 1406, 1407 (1957). The stigma is likely to follow the student and preclude him from completing his education at other institutions. We hold that Than has a constitutionally protected liberty interest in his graduate education that must be afforded procedural due process. *Accord, Goss,* 419 U.S. at 574–75, 95 S.Ct. at 736–37; *see also Dixon v. Alabama State Bd. of Educ.* 294 F.2d 150, 157 (5th Cir.), *cert. denied,* 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961) (students expelled from state university for misconduct have interest in continuing education

in good standing that is entitled to due process).[1]

## III.

■ Having concluded that the due course guarantee applies, we must next determine what process is due. Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Calvert,* 394 S.W.2d at 657. What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances. *Mathews,* 424 U.S. at 334, 96 S.Ct. at 902; *Goss,* 419 U.S. at 578, 95 S.Ct. at 738–39. This flexible standard includes three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

In student disciplinary actions involving temporary suspensions, the United States Supreme Court has held that due process requires that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. *Goss,* 419 U.S. at 581, 95 S.Ct. at 740. *Goss* stopped short of requiring a formal hearing. Rather, *Goss* required nothing more than an "informal give-and-take" between the student and the administrative body dismissing him that would give the student the opportunity

---

**1.** With respect to whether Than has a protected property interest, UT argues that while a student may have such a property interest in public elementary and secondary education, *see Goss v. Lopez,* 419 U.S. 565, 573–74, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975), there is no such property interest for university level education. A property interest may arise in public elementary and secondary education, UT asserts, because

state law promises such education and requires compulsory attendance. Texas law makes no such provision for undergraduate or graduate education at state universities. Because we conclude that Than at least has a liberty interest in his graduate education, we need not decide and express no opinion on whether graduate students have a property interest in their education at state universities.

to characterize his conduct and put it in what he deems the proper context. *Id.* at 583–84, 95 S.Ct. at 740–41.

■ UT argues that Than's dismissal was not solely for disciplinary reasons, but was for academic reasons as well, thus requiring less stringent procedural due process than is required under *Goss* for disciplinary actions. *See Board of Curators, Univ. of Mo. v. Horowitz,* 435 U.S. 78, 86, 98 S.Ct. 948, 953, 55 L.Ed.2d 124 (1977). This argument is specious. Academic dismissals arise from a failure to attain a standard of excellence in studies whereas disciplinary dismissals arise from acts of misconduct. *Id.* at 86–87, 98 S.Ct. at 953–54. Than's dismissal for academic dishonesty unquestionably is a disciplinary action for misconduct. *See Nash v. Auburn Univ.,* 812 F.2d 655, 660–61 (11th Cir.1987). Because we conclude that Than's dismissal involved a disciplinary matter, we need not decide and express no opinion on what, if any, procedural due process must be afforded when academic dismissals are involved.

■ At a minimum, when university officials seek to sanction a student for misconduct, our due course of law guarantee requires oral or written notice of the charges against the student and, if the student denies them, an explanation of the evidence the authorities have and an opportunity to present his or her side of the story. As a flexible standard, however, the process due may vary depending on the competing interests of the student and the university. When, as here, a student may be expelled and deprived not only of his or her education but of professional opportunities as well, the student's interest is entitled to more deference than would be afforded for a temporary suspension. Although university officials presumably act in good faith bringing charges of academic dishonesty against a student, there is a significant risk of error because the controlling facts are in dispute and university officials often must rely on circumstantial evidence and reports of others. *See Goss,* 419 U.S. at 580, 95 S.Ct. at 739. Due process requires in this case something more than the "informal give-and-take" required for short temporary suspensions.

■ While we conclude that due process requires some level of process beyond the informal hearing of *Goss,* we cannot specify what process must be afforded for all disciplinary dismissals from state-supported universities. "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); *Bexar County Sheriff's Civil Service Comm'n v. Davis,* 802 S.W.2d 659, 661–62 (Tex.1990), *cert. denied,* 502 U.S. 811, 112 S.Ct. 57, 116 L.Ed.2d 34 (1991). We caution, additionally, that a university " 'is an academic institution, not a courtroom or administrative hearing room,' and thus should not be weighted down with formalized procedural requirements imposed by actors estranged from the academic environment." *Davis v. Mann,* 882 F.2d 967, 974 (5th Cir.1989). Judicial interposition in the disciplinary decisions of state supported schools raises problems requiring care and restraint. *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). In addition, we are careful to admonish that the due course of law guarantee, like the due process clause, does not ensure that the academic disciplinary process is accurate and without error; it merely guards against the risk of unfair dismissal or suspension if that may be accomplished without prohibitive cost or interference with the educational process. *See Nash,* 812 F.2d at 661 (citing *Goss,* 419 U.S. at 579–80, 95 S.Ct. at 738–39).

Mindful of these concerns, we note that UT, pursuant to its own rules and regulations, afforded Than a high level of due process. Than was given oral and written notice of the charges against him; was given written notice of evidence to be used against him in the hearing, including a witness list and summaries of their testimony; was afforded the right to counsel or other representation; and was afforded a formal hearing with the opportunity to present evidence and cross-examine witnesses. Despite this level of process, we conclude that Than's due course of law rights were violated by his exclusion from a portion of the evidentiary proceed-

ings. Although Than additionally alleges several deficiencies in the notice he received concerning the disciplinary action the university was commencing, our disposition in this matter cures those complaints. Thus, we express no opinion on whether any other aspect of the process afforded to Than is required by our due course guarantee in student disciplinary matters.

The undisputed evidence shows that at the conclusion of testimony and remarks in Than's hearing, the hearing officer personally examined the site where the test was conducted, accompanied only by Dr. McNeese. Than asked to accompany them to the testing room, but the hearing officer refused. No contemporaneous record exists of what transpired during the hearing officer's inspection of the exam room. However, the hearing officer testified by deposition that on her visit to the test site she sat in four different chairs, representing the place occupied by Than, Mr. Chiang, the student from whom Than allegedly cheated, and the two proctors. In her report concluding that Than should be expelled, she lists as one of her findings that "I sat in the chair occupied by Mr. Than during the examination and could clearly see the paper from the examination chair occupied by Mr. Chiang." In determining Than's guilt, the hearing officer relied, at least in part, on the evidence she obtained while sitting in those chairs.

We evaluate this ex parte contact in light of all of the surrounding circumstances. In other words, we decide whether the probable value of allowing Than to accompany the others to the examination room, together with his interest in attaining his medical degree and protecting his reputation, outweighed the burden that would be placed on UT by allowing him to attend. *See Mathews*, 424 U.S. at 335, 96 S.Ct. at 903; *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 924 (6th Cir.1988).

As previously discussed, Than's interest in continuing his medical education and preserving his good name was substantial. We further note that the evidence obtained during the visit was relevant and material, and that it was relied upon by the hearing officer in her decision. If Than had been allowed to accompany the others, he would have had the opportunity to respond to this evidence and to offer his own explanation about the seating arrangements. But, because the visit was conducted ex parte and at the end of the presentation of the evidence, Than was given neither a contemporaneous nor an after-the-fact opportunity to respond.

We balance UT's failure to give Than an opportunity to rebut this evidence with the burden on UT of providing this procedural safeguard. In this case, we fail to see any burden that would have resulted from Than's presence during the visit to the examination room. We therefore conclude that Than was not accorded due course of law. *See Swank v. Smart*, 898 F.2d 1247, 1252–54 (7th Cir. 1990) (holding that ex parte presentation of evidence during an employee's discharge hearing denied the employee due process); *Newsome*, 842 F.2d at 927–28 (holding that ex parte presentation of evidence during a high school student's expulsion hearing denied the student due process).

As suggested by the balancing of the competing interests and burdens, not all ex parte contacts or conversations, however slight, are a *per se* denial of due course of law. Rather, certain circumstances may justify the ex parte presentation of evidence. *See Newsome*, 842 F.2d at 925 (holding that the necessity of protecting the anonymity of student witnesses justified the exclusion of the accused student); *Shidaker v. Carlin*, 782 F.2d 746, 753 (7th Cir.1986), *judgm't vacated on other grounds sub nom., Tisch v. Shidaker*, 481 U.S. 1001, 107 S.Ct. 1621, 95 L.Ed.2d 195 (1987) ("Ex parte evidence is not fatal if it is cumulative."). But when, as here, a student with a liberty interest is denied an opportunity to respond to a new piece of evidence against him, and the countervailing burden on the state is slight, there is an infringement of due course of law. Additionally, we are troubled by the fact that there is no record of what transpired during the visit. We therefore cannot be certain that no other evidence was presented or additional argument made. *Cf. Simer v. Rios*, 661 F.2d 655, 680 n. 54 (7th Cir.1981) (noting that, in an adversarial proceeding, one of the factors in determining whether ex parte con-

tact violated due process was whether it was made part of the record). The unrecorded ex parte inspection of the testing site violated Than's right to due course of law.

## IV.

■ UT argues that even if Than's due process rights have been violated he is not entitled to any relief. UT contends that Than's appeal to Dr. Low cured any alleged procedural due process defects with the process Than received. We disagree.

There may be circumstances in which a subsequent hearing cures procedural defects in the initial hearing. In *Sullivan v. Houston Indep. Sch. Dist.*, 475 F.2d 1071, 1077 (5th Cir.1973), for example, the court held that failure to provide an impartial hearing officer for the initial hearing on the suspension was cured by a de novo appellate hearing before the assistant superintendent and a court ordered de novo hearing before the school board. Similarly, in *Murray v. West Baton Rouge Parish Sch. Bd.*, 472 F.2d 438, 443 (5th Cir.1973), the court held that mass suspensions of students without prior hearings was cured by court ordered reinstatement of the students and hearings on the merits before school officials.

While *Sullivan* and *Murray* suggest that post-deprivation de novo proceedings may cure defects in the initial process, it is less clear the extent to which ordinary appellate review can cure initial procedural defects. In this case, Dr. Low simply reviewed the record from the disciplinary hearing. Than, represented by counsel, submitted written arguments on appeal and UT filed a written response. Dr. Low testified that in his review, he checked the record to ensure that the student received the appropriate procedural protections and then reviewed the evidence to determine if it supported the hearing officer's decision. His review was not a de novo review of the merits.

Than received no additional process on appeal that would cure the defects in the initial hearing. The hearing officer's decision was based on evidence to which Than had no opportunity to respond. The procedural defect is in the evidence relied on by the hearing officer. Appellate review that is limited

to that evidentiary record simply cannot cure the defect. We conclude that having been denied the opportunity to participate in the inspection of the examination room, Than is entitled to a new hearing on the charge that he cheated on the February 22, 1991 NBME surgery examination.

■ The trial court issued a permanent injunction requiring UT to do the following:

1. remove from Than's transcript the "F" he received for his grade in surgery and assign him the grade he would have received had no disciplinary action been taken against him;

2. remove from Than's records the penalty of expulsion as well as all documents relating to the charge of academic dishonesty, including, but not limited to, records regarding the charge, investigation, recommendation, hearing and appeal;

3. respond as UT would for any student who graduated in good standing to any requests for letters, transcripts and other information required by Than in making and completing his application for residency programs, or requested by or about Than for employment or other purposes;

4. be prohibited from refusing to issue Than a diploma on the basis of the expulsion resulting from the student disciplinary proceedings on the charge of academic dishonesty;

5. issue Than a diploma and all certificates necessary for his participation in post-graduate residency programs.

The court of appeals affirmed this injunction, reasoning that too much time had passed for Than to receive a fair hearing. In general, however, the remedy for a denial of due process is due process. *See Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700–01, 33 L.Ed.2d 570 (1972) (upon proof of protected interest, professor whose contract was not renewed is not entitled to reinstatement but to hearing comporting with due process); *McIntire v. State,* 698 S.W.2d 652, 661–62 (Tex.Crim.App.1985) (remedy for failure to grant hearing on motion for new trial is a hearing, not a new trial). Than is entitled to a fair hearing with notice of the charges and evidence to be used against him

934

and with an opportunity to defend against the charges. The injunction exceeds the proper remedy.

■ Moreover, the injunctive relief represents unwarranted judicial interference with the educational process. The courts should tread lightly in fashioning remedies for due process violations that affect the academic decisions of state-supported universities. What grade should be awarded and whether UT issues Than a diploma should be determined by university officials after notice and hearing.

We modify the permanent injunction and order that pending a new hearing on the charge of academic dishonesty, UT:

1. remove from Than's transcript the "F" he received for his grade in surgery; and

2. remove from Than's records the penalty of expulsion.

We affirm that portion of the permanent injunction ordering that the bond posted by Than in connection with the temporary injunction be refunded to Than. In all other respects, we vacate the permanent injunction.

\* \* \* \* \* \*

In sum, we hold that Than has a liberty interest in his medical education that is entitled to due process and that the hearing given to Than failed to comport with the due course of law guarantee of the Texas Constitution. UT must afford Than a new hearing on the charge of academic dishonesty consistent with our opinion. We affirm the permanent injunction as modified.