TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00227-CV







Tommy E. Swate, M.D., Appellant



v.



Texas Tech University and Texas Tech University Health Sciences Center, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 97-12764, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING








 Dr. Tommy E. Swate challenges his dismissal from the anesthesiology residency
program at the Texas Tech University Health Sciences Center in El Paso. By this appeal, he
challenges the trial court's denial of his request for a temporary injunction. We will affirm the
trial court's order.


THE UNDERLYING CONTROVERSY


 Swate, a licensed physician, wanted to go through a medical school residency
program to become an obstetric anesthesiologist. He sent an application to Tech's Lubbock
center, but was rejected. He then sent his curriculum vitae and some letters of recommendation
to Tech in El Paso; Swate and El Paso officials disagree whether he sent a completed formal
application to El Paso and whether the documents he sent were altered. He interviewed in El Paso
in April 1997 and signed a contract in May 1997 for a three-year residency. (All dates are in 1997
unless otherwise noted.) On June 20, for reasons unexplained, Lubbock faxed El Paso his
Lubbock application; attached to the application was his disclosure statement regarding the actions
by the Texas State Board of Medical Examiners ("Texas Board"). He started the residency July
1. There were no complaints regarding his performance.

 On July 31, the coordinator of graduate medical education at the Lubbock campus
notified in writing her counterpart at El Paso that Swate's medical license had been suspended,
with the suspension probated. The Lubbock coordinator stated the suspension was due to
professional failure to practice medicine in an acceptable manner consistent with public health and
welfare, repeated or recurring meritorious health-care liability claims, unprofessional or
dishonorable conduct, and disciplinary action taken by another state. The El Paso coordinator
informed Dr. Manuel Schydlower, assistant dean for medical education and chair of the graduate
medical education committee. Schydlower notified Dr. David Raphael, director of the
anesthesiology residency program, and suspended Swate with pay pending an investigation. 

 On August 5, Swate met informally with Schydlower, Raphael, a Tech attorney,
and El Paso's regional dean, Dr. Manuel de la Rosa. Swate told them that his file under review
lacked his El Paso application, letters of recommendation, and letters he had written El Paso.

 Thereafter, at Schydlower's request, the Texas Board provided a copy of its agreed
order regarding the probation of the suspension of Swate's medical license. Though the order
does not prohibit Swate from being an anesthesiologist or dispensing narcotics, it concerned the
El Paso staff. The order mentions alleged violations of various state and federal regulations while
Swate operated methadone clinics, allegations mooted when Swate relinquished control of the
clinics before evidence was presented. The Texas Board found that, though Swate told the
Louisiana Board of Medical Examiners that he did not engage in the practice of medicine from
1990-1993, he practiced medicine as medical director of the methadone clinics during that time.
The Texas Board also found he withheld from the Louisiana Board information regarding the
revocation of the methadone clinic licenses. The Texas Board ordered that Swate complete a
residency program and permitted him to work in an institutional setting or emergency room. The
order specifies strict compliance with paperwork requirements. It mandates that he "give a copy
of this order to all hospitals and health care entities where he admits or accepts patients." In a
1992 order, the Texas Board detailed many specific patient complaints related to Swate's
performance of abortions and one complaint regarding the impact of his abrupt closure of his
medical practice. It restrained him from performing abortions.

 After reviewing the agreed order, de la Rosa decided that Swate's failure to disclose
his past difficulties violated section 3(b) of Tech's Graduate Medical Education Program
Agreement which provides:


 This appointment is conditional upon successful completion of all requirements of
the Texas State Board of Medical Examiners and of any requirements specified by
the department offering the resident appointment, prior to assuming duties at
TTUHSC. Each resident has an affirmative duty to timely disclose any information
to the Program Director which could reasonably affect eligibility, inability to obtain
a license, inability to pursue training or provide patient care, or any incident
involving moral turpitude of the resident. In the event a resident is unable to meet
the requirements for practicing at any of the affiliated hospitals or participating
institutions, this agreement is invalid.

 

By letter dated August 15, De la Rosa informed Swate that his violation of section 3(b) voided the
residency contract. 

 Swate appealed his termination. Tech's House Staff Administrative Guidelines
required Schydlower, as chair of the graduate medical education ("GME") committee, to appoint
an appeal review subcommittee consisting of three faculty from the GME committee and a
representative from the house staff (residents). Swate could introduce evidence and appear with
legal counsel in an advisory capacity. The subcommittee would report its findings to the GME
committee and make a recommendation to the regional dean, who would make a recommendation
to the dean of Tech's entire school of medicine, Joel Kupersmith.

 The subcommittee met with Swate and considered testimony, evidence, and
argument; apart from (and possibly after) that hearing, the chair of the subcommittee called the
Texas Board for an opinion regarding the requirement that Swate give a copy of the agreed order
to all health care entities where he "admits or accepts" patients. Swate argued at the hearing that
he neither admitted nor accepted patients as an anesthesiology resident. The subcommittee
reported, however, that a Texas Board representative opined that an anesthesiology resident
"accepts" patients. The subcommittee accordingly found that Swate should have given a copy of
the agreed order to the Tech center in El Paso.

 The subcommittee recommended dismissal because Swate failed to provide "full
accurate, complete and truthful disclosure of his medical licensure restrictions" as required by
section 3(b) of the GME program agreement. The subcommittee also noted discrepancies between
his alleged El Paso application, his Lubbock application, and the agreed order. They accordingly
supported Dean de la Rosa's conclusion that the violation of the GME program agreement
rendered the residency contract void. This decision was affirmed up the chain of review,
culminating with Dean Kupersmith terminating Swate's residency by letter dated October 2. 

 Swate filed this suit complaining that irregularities in the suspension review
deprived him of due process. He requested a temporary and permanent injunction requiring his
reinstatement to the residency program. At the hearing on the temporary injunction, Swate orally
requested the injunction require his reinstatement pending a hearing providing him due process. 
This interlocutory appeal followed the trial court's denial of his request for temporary injunction. 


THE STANDARD OF REVIEW



 We review the denial of a temporary injunction for an abuse of discretion. Walling
v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993). A trial court may grant a temporary injunction if
the applicant is entitled to the preservation of the status quo of the suit's subject matter pending
trial on the merits. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978). The applicant need not
prove that he will prevail on trial of the merits, but only that he probably will prevail and that he
probably will be injured if the status quo is not preserved. Sun Oil Co. v. Whitaker, 424 S.W.2d
216, 218 (Tex. 1968) (cited by Walling, 863 S.W.2d at 58). An abuse of discretion does not exist
where the court bases its decision on conflicting evidence. Davis, 571 S.W.2d at 862.

 The supreme court has declined to specify what process must be afforded during
disciplinary dismissals from state-supported universities. University of Texas Med. Sch. v. Than,
901 S.W.2d 926, 931 (Tex. 1995). The minimum guarantees are oral or written notice of the
charges against the student and, if the student denies the charges, an explanation of the evidence
the authorities have and an opportunity to present his side of the story. Id. The court expressly
refused to impose inflexible procedural requirements on the academic proceeding. Id.


ANALYSIS



 Swate complains that the trial court abused its discretion by failing to grant the
temporary injunction. He contends on appeal that the record shows Tech violated his right to due
process by failing to provide an impartial panel to review his dismissal, by failing to provide
notice of all charges and witnesses before the hearing, and by considering evidence outside the
record of the hearing.

 The trial court did not abuse its discretion by concluding Swate failed to show he
probably will prove that bias by the subcommittee members deprived him of due process. Swate
contends the members were biased against him because they were subordinate to de la Rosa and
Schydlower, the deans whose suspension of Swate the subcommittee was reviewing. Other than
this inference, Swate provided no proof of the alleged bias. Swate cites no authority that a
subcommittee drawn from persons subordinate to the dean is biased per se. We conclude that the
trial court did not abuse its discretion by finding that Swate did not show he likely would prove
at trial that bias deprived him of due process.

 Nor did the trial court abuse its discretion by concluding that Swate did not show
he probably will prove deprivation of due process from deficiencies in the notice of charges,
witnesses, and evidence. Swate alleges that the only notice of the complaint lodged against him
was in a letter dated September 4, 1997, from Schydlower to Swate. Schydlower wrote the
following:


 A full disclosure of background medical and licensure information are essential for
fair and appropriate assessment of the applicant prior to appointment and
employment. At the time of your interview and acceptance, the TTUHSC-EP
Department of Anesthesiology had no data about your prior and current licensure
restrictions, probation and terms of probation to make a fully informed decision
and choice about your application. TTUHSC-EP and its Department of
Anesthesiology became aware of non-disclosed information regarding your
licensure for the first time on July 31, 1997. TTUHSC-EP and the Department of
Anesthesiology did not have a TTUHSC-El Paso application from you, and there
was no disclosure of current and previous restrictions of your Texas and Louisiana
medical licenses either personally at the interviews or in the curriculum vitae and
personal statement that you provided. Your TTUHSC-Lubbock application and
different curriculum vitae with a disclosure were sent inadvertently to the Office
of GME in El Paso. On June 20, 1997 and Administrative Assistant filed them
without first directing them to the attention of the Chair of Anesthesiology, or the
Assistant Dean for Medical Education. This occurred after your acceptance to the
residency and 12 days before the beginning of the academic year.


This resembles the basis the subcommittee stated in its report recommending Swate's dismissal. 
The subcommittee wrote that


 we do not believe that Dr. Swate provided full, accurate, complete and truthful
disclosure of his medical licensure restrictions in Texas and other states. We have
noted his conflicting, false or incomplete answers to TTUHSC application
questions concerning medical liability claims and actions concerning
DEA/controlled substances registration. 



We find no abuse of discretion in the trial court's conclusion that Swate failed to show he probably
will prove a due-process violation.

 Swate focuses on the ex parte telephone call between the subcommittee chair and
someone from the Texas Board regarding whether the Texas Board believed anesthesiology
residents "accept" patients within the terms of the agreed order. Swate contends the call deprived
him of notice that a Texas Board witness would be called as well as the opportunity to cross-examine this witness and to argue against the witness's opinion. He contends that this call
resembles the ex parte evidence-gathering by the hearings examiner found to deny due process in
Than. 

 Than was accused of cheating on a medical school test and dismissed from school
after appearing before a hearings examiner. 901 S.W.2d at 928. The supreme court held that he
was denied due process when the hearing officer did not let him accompany her and an associate
dean when they visited the room in which he took the test and did not let him respond to their
findings. Id. at 931-32. The supreme court held that Than's substantial interest in continuing his
medical education and preserving his good name outweighed the relatively small burden in
allowing him to join the site visit and to respond to the findings; the court found this balance
significant because the hearing officer relied on the visit in her decision. Id. at 932. 

 We conclude that the trial court below did not abuse its discretion by concluding
that Swate did not show he likely would prove a due-process violation. As in Than, the
subcommittee included in its findings information gathered outside the hearing. See id. A
difference in the information gathered distinguishes this case from Than, however. Than's
hearings examiner sat in the seats occupied by Than and the person he was accused of copying
before concluding that Than could have seen the other student's paper clearly. Id. Had Than been
allowed to participate in the viewing of the room, he could have debated details like body positions
of those involved that might affect whether he could have seen the other student's test paper. In
this case, the Texas Board told the subcommittee's chair that the Texas Board believed Swate
"accepted" patients within the meaning of the agreed order; this was not the chair's conjecture
about how the Texas Board might enforce the order, but a statement from the Texas Board
regarding how it interprets its own order. Swate gave his contrary interpretation of the order at
the hearing, stating that "he neither 'admits or accepts' patients as an anesthesiology resident and
that his lawyer said that he 'did not have to' provide a copy of the Order." He did not explain
here or at trial what his participation in or after the call to the Texas Board would have changed. 
The trial court did not abuse its discretion by concluding that Swate did not show he likely would
prove a denial of due process from the chair's participation in and use of the call to the Texas
Board.

 Swate finally asserts on appeal that "[s]everal of the items listed as justifications
for Swate's dismissal in the committee's report were not discussed during the hearing, nor were
they contained in the Agreed Order." Swate also asserts that "[m]any of the facts contained in the
findings were false and could have been refuted by Dr. Swate, however, he was not given notice
that such matters were being considered or an opportunity to respond to such evidence." The
citations to the record that he gives after the first quoted sentence refer to the subcommittee report
and agreed order, but to no particular findings. The record references after the second quoted
sentence refer to testimony about the telephone call from the subcommittee chair to the Texas
Board. Neither cite tells us what items were not discussed during the hearing or what facts or
justifications he disputes other than the Texas Board's opinion regarding the interpretation of
"accepts patients" in its agreed order. Our review of the subcommittee report and the agreed
order reveal no other ex parte influence or clearly incorrect findings. Swate's failure to challenge
specific justifications or fact-findings renders review of his allegations impossible.


CONCLUSION


 Having resolved the issues in this appeal against Swate, we hold that the trial court
did not abuse its discretion by denying Swate's request for temporary injunction because he did
not show that he probably will be able to prove that Tech denied him due process.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed

Filed: March 4, 1999

Do Not Publish








* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).



e visit in her decision. Id. at 932. 

 We conclude that the trial court below did not abuse its discretion by concluding
that Swate did not show he likely would prove a due-process violation. As in Than, the
subcommittee included in its findings information gathered outside the hearing. See id. A
difference in the information gathered distinguishes this case from Than, however. Than's
hearings examiner sat in the seats occupied by Than and the person he was accused of copying
before concluding that Than could have seen the other student's paper clearly. Id. Had Than been
allowed to participate in the viewing of the room, he could have debated details like body positions
of those involved that might affect whether he could have seen the other student's test paper. In
this case, the Texas Board told the subcommittee's chair that the Texas Board believed Swate
"accepted" patients within the meaning of the agreed order; this was not the chair's conjecture
about how the Texas Board might enforce the order, but a statement from the Texas Board
regarding how it interprets its own order. Swate gave his contrary interpretation of the order at
the hearing, stating that "he neither 'admits or accepts' patients as an anesthesiology resident and
that his lawyer said that he 'did not have to' provide a copy of the Order." He did not explain
here or at trial what his participation in or after the call to the Texas Board would have changed. 
The trial court did not abuse its discretion by concluding that Swate did not show he likely would
prove a denial of due process from the chair's participation in and use of the call to the Texas
Board.

 Swate finally asserts on appeal that "[s]everal of the items listed as justifications
for Swate's dismissal in the committee's report were not discussed during the hearing, nor were
they contained in the Agreed Order." Swate also asserts that "[m]any of the facts contained in the
findings were false and could have been refuted by Dr. Swate, however, he was not given notice
that such matters were being considered or an opportunity to respond to such evidence." The
citations to the record that he gives after the