**Reversed and Rendered and Memorandum Opinion filed January 15, 2026.**



In The

# Fifteenth Court of Appeals

_____

## NO. 15-24-00102-CV

_____

**TEXAS STATE BOARD OF VETERINARY MEDICAL EXAMINERS AND BRITTANEY SHARKEY, SOLELY IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE TEXAS STATE BOARD OF VETERINARY MEDICAL EXAMINERS, Appellants**

**V.**

**SHAWN MESSONNIER, DVM, Appellee**

**On Appeal from the 98th District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-21-001211**

## MEMORANDUM OPINION

This is an appeal from a bench trial in which Shawn Messonnier, DVM, a veterinarian licensed by the Texas State Board of Veterinary Medical Examiners (the Board), challenged the constitutionality of a statute and certain administrative rules under which the Board refused to provide him copies of complaints made against him prior to holding an informal conference on the complaints. After a

hearing, the trial court signed a final judgment declaring that the statute relating to the confidentiality of the complaints and its associated rules were unconstitutional as applied to Messonnier to the extent they allowed the Board not to produce the complaints prior to the informal conference. We reverse the trial court's judgment and render judgment that Messonnier's claims for declaratory relief are denied.

## BACKGROUND

In 2019, the Board sent Messonnier notice that it had received a complaint concerning his treatment of six animals. The letter included the names of the animals, the beginning date of treatment for each, and a list of Board rules potentially violated. This notice, however, did not include copies of the complaint or details of the factual allegations, but requested that Messonnier provide a narrative of the care rendered to the animals in question and that he produce his records of treatment for each. It also provided a time frame for the Board's investigation.

After receipt of the notice, Messonnier's attorney made an Open Records Request that the Board produce "all complaints against Dr. Messonnier, including all documents and tangible things attached to, enclosed with, or referred to within the complaint, and any reports of investigations." The Board sought a ruling from the Open Records Division of the Office of the Attorney General as to whether such records were exempt from production under Section 801.207(b) of the Occupations Code as amended in 2017.[1] *See* Tex. Occ. Code § 801.207(b); *see also* Tex. Gov't Code § 552.301. The Attorney General ruled that the complaint was "confidential by law" and therefore could not be released to Messonnier. Tex. Att'y Gen. Op.

---

[1] Unless otherwise noted, all references to Chapter 801 of the Occupations Code and to the Board's related administrative rules are to the versions as they existed at the relevant time frame and which the parties acknowledge govern this dispute.

2

OR2020-26067 (2020) (citing Tex. Gov't Code § 552.101 (excepting from disclosure "information considered to be confidential by law, either constitutional, statutory, or by judicial decision")).

The Board then issued a letter to Messonnier providing notice of an informal conference (Notice) relating to the complaints against him. *See* Tex. Occ. Code § 801.408 ("Informal Proceedings"). In this Notice, the Board listed additional complaint numbers to be addressed that were not in its original letter. According to the Notice, the complaints and the investigation that followed indicated that Messonnier had failed to meet the professional standard of care in treating animals, failed to refer any patient to a specialist, failed to maintain adequate treatment records, failed to document medical need for prescriptions administered, failed to note the dates certain drugs were compounded and other details concerning the drugs and the animal treated, and failed to provide missing or updated medical records to the Board upon request. *See id.* § 801.402 ("General Grounds for License Denial or Disciplinary Action"); 22 Tex. Admin. Code §§ 573.22, .24, .27, .41, .44, .52, .75. The Notice also noted potential violations of Board Rules and Professional Standards of Care. The Notice provided that Messonnier would be allowed to appear by Zoom for ten minutes to address the allegations with an Enforcement Committee made up of two veterinary Board members and a public Board member. The Notice informed Messonnier that after the conference, the Enforcement Committee would "deliberate" and "may (1) dismiss the complaint; (2) refer the complaint for further investigation; or (3) find that a violation of the Act or Board rules has occurred." The Notice also stated that if the Enforcement Committee found a violation, it would inform Messonnier and "may offer an agreed order with proposed settlement terms."

Prior to the informal conference, Messonnier filed suit, seeking declaratory, mandamus, and injunctive relief. Specifically, he sought a writ of mandamus

compelling the Board to produce the complaints to him; a temporary restraining order prohibiting the informal conference from taking place until the Board produced the documents he requested; a temporary injunction prohibiting the Board from holding the informal conference until the Board produced the requested documents; and a declaration that Section 801.207(b) of the Texas Occupations Code and its related administrative rules (specifically, 22 Texas Administrative Code Sections 575.28 and 575.29), as applied, violate his and similarly situated license holders' due process rights under the United States and Texas Constitutions.

After a hearing, the trial court signed a final judgment granting Messonnier's request for declaratory relief but denying all other requested relief. The Board and the other defendants then filed this appeal.

## ANALYSIS

Under the Veterinary Licensing Act, the Board is charged with receiving and investigating complaints regarding the practice of veterinary medicine in the state of Texas. *See* Tex. Occ. Code §§ 801.201-.209. In general, complaints and information gathered in connection with an investigation are considered confidential. *See id.* § 801.207(b). Specifically, the version of Section 801.207(b) applicable to this case states:

> (b) Each complaint, investigation file and record, and other investigation report and all other investigative information in the possession of or received or gathered by the board or the board's employees or agents relating to a license holder, an application for license, or a criminal investigation or proceeding is privileged and confidential and is not subject to discovery, subpoena, or other means of legal compulsion for release *to anyone* other than the board or the board's employees or agents involved in discipline of a license holder.

4

Tex. Occ. Code § 801.207(b) (emphasis added).  In refusing Messonnier's request for copies of the complaints against him, the Board asserted that this provision strictly precludes production of a complaint to anyone, including the license holder under investigation.[2]

There is no dispute that the complaints against Messonnier, although "public information," are not subject to the Texas Public Information Act's (PIA) general mandatory disclosure requirement. *See* Tex. Gov't Code §§ 552.001-.376.  Public information is excepted from mandatory disclosure under the PIA if it is "information considered to be confidential by law, either constitutional, statutory, or by judicial decision".  *Id.* § 552.10.  Because former Section 801.207(b) broadly prohibits the Board from producing copies of complaints to anyone, including the license holder under investigation, such complaints are considered "confidential by law" under the PIA.

Instead, the issue in this appeal is whether Section 801.207(b)'s broad prohibition on disclosure violates due process to the extent it precludes the Board from producing to a license holder, like Messonnier, copies of the complaints made against him prior to an informal conference before a Board investigatory committee.

---

[2] The Legislature has amended Section 801.207 twice since the version governing this dispute was in effect. *See* Act of June 15, 2025, 89th Leg., R.S., S.B. 2155, § 22 (to be codified as an amendment to Tex. Occ. Code § 801.207); Act of June 8, 2021, 87th Leg., R.S., ch. 419, § 2, sec. 801.207, 2021 Tex. Gen. Laws 824, 825.  Notably, under the current version, the Board may disclose information regarding a complaint to a respondent license holder, notwithstanding the statute's general prohibition on disclosure.  Tex. Occ. Code § 801.207(b)(2) ("Notwithstanding Subsection (a), the board may disclose information regarding a complaint or investigation to . . . a respondent or the respondent's authorized representative[.]").  In addition, the Board must provide to the license holder "a copy of the record of any review conducted," if medical expertise was required in reviewing the complaint.  *Id.* § 801.207(b-1).

Because it presents a question of law, we review the trial court's decision on this constitutional issue under a de novo standard of review. *Perry v. Del Rio,* 67 S.W.3d 85, 91 (Tex. 2001).

Before any due-process rights attach, a "citizen must have a liberty or property interest that is entitled to constitutional protection." *Tex. Parks & Wildlife Dept. v. RW Trophy Ranch, Ltd.*, 712 S.W.3d 943, 954 (Tex. App.—15th 2025, no pet.) (quoting *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 61 (Tex. 2018)). Here, Messonnier contends that he has a constitutionally protected property right in his license to practice veterinary medicine, and for purposes of this opinion, we will assume without deciding that he is correct. *See Scally v. Tex. State Bd. of Med. Examiners*, 351 S.W.3d 434, 446-47 (Tex. App.—Austin 2011, pet. denied) (recognizing constitutionally protected property right in medical license that is "subject to the state's power to impose conditions upon the granting or revocation of the license for the protection of society"). Based on that assumption, we will consider whether application of Section 801.207(b) to Messonnier in these circumstances allows his license to be taken from him without procedural due process. U.S. Const. amend. XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]"); Tex. Const. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities . . . except by the due course of the law of the land.").

"If an individual is deprived of a property right, the government must afford an appropriate and meaningful opportunity to be heard to comport with procedural due process." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 939 (Tex. 1998). What process is due depends on "the practical requirements of the circumstances," using a flexible standard that considers "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through

6

the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). Applying this test, and for the reasons that follow, we conclude that Messonnier received all process to which he was due at the informal-conference stage of the proceedings.

According to Messonnier, the Notice he received from the Board indicated that it would "deliberate" and that one possible outcome would be to "find" that he violated the law or Board rules and propose an agreed order. As such, he contends that the result of the informal conference is effectively an adjudication without his having ever received a copy of the complaints against him. The parties disagree as to whether the committee's finding is effectively an adjudication based on the language of the letter. But the letter's language does not control; rather, the language of the statute and the Board's rules control the effect of a Board committee's finding in an informal conference.

Section 801.408 of the Occupations Code provides that "[a] committee of two or more veterinarian board members and one or more public board members must be present at an informal proceeding for a complaint that requires medical expertise. *The committee shall recommend enforcement action at the informal proceeding.*" Tex. Occ. Code § 801.408(c) (emphasis added). By statute, the committee does not have the ability to revoke a veterinarian's license as a result of an informal conference; rather, the committee deliberates and may make findings that it then refers to the Board with a recommendation that the enforcement action continue. *Id.* § 801.408(c), (d).; *see id.* § 801.453. If that finding and recommendation occurs, then the proceeding advances to a contested case hearing before the State Office of

Administrative Hearings (SOAH). *See id.* §§ 801.401, .402 .407. In a contested case hearing, "the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing." Tex. Gov't Code § 2001.003(1); *see* Tex. Occ. Code § 801.407(b) ("A hearing conducted under this section is governed by Chapter 2001, Government Code.").

When a contested case proceeding is instituted, the license holder is entitled to receive a copy of the complaints and any evidence the Board will present at the hearing. "Not later than the 30th day after the date of receipt of a written request from a license holder who is the subject of a formal complaint initiated and filed under this subchapter or from the license holder's counsel of record, . . . the board shall provide the license holder with access to all information in its possession that the board intends to offer into evidence in presenting its case in chief at the contested hearing on the complaint." Tex. Occ. Code § 801.207(d). And for that hearing, the license holder is allowed to conduct discovery and to call and cross-examine witnesses. *See generally* 1 Tex. Admin. Code §§ 155.1–.509. Therefore, at the contested case hearing, the license holder receives due process—including notice, a hearing, and an impartial factfinder. *See Scally*, 351 S.W.3d at 448.

At the time Messonnier filed his suit, the Board had not filed any formal complaint against him at SOAH and had not imposed any disciplinary action against him. At most, the posture before the Board was an investigatory one, with an invitation for Messonnier to appear before a Board committee and produce documents to explain his treatment of the animals in question, at which time the committee would then decide whether it would proceed further with the complaint, dismiss the complaint, or offer a settlement. Messonnier's property right in his license was not at risk unless a formal complaint was made and proceeded to a contested case hearing before SOAH. It is undisputed that neither the Board nor the

8

committee took any action with respect to Messonnier's license before he filed suit. To be sure, it would be valuable for any veterinarian to have all the details of the complaints prior to the informal conference; but that benefit is just that—a benefit. It is not a necessary safeguard to prevent deprivation of his property right without due process.

The Board has the right and the duty to investigate veterinarians when it receives a complaint. Until that investigation leads to a proceeding that could result in a final decision regarding a license, the Board was compelled under the statute and the Attorney General's ruling to withhold the complaints against Messonnier. This requirement of confidentiality reflects a government interest to "protect the identity of a complainant to the extent possible." Tex. Occ. Code § 801.207(c). Against the backdrop of this confidentiality requirement, the Board's rules allow for other procedural safeguards related to the informal conference. Board Rule 575.29 requires not only written notice of the conference, including a statement of the alleged violations to be considered, but also an opportunity for the respondent veterinarian to be heard and to be represented by counsel. 22 Tex. Admin. Code § 575.29(a), (d).

Given the nature of the informal conference and the fact that Messonnier could not be deprived of his license without further proceedings after the informal conference, we hold that the Board's rules providing Messonnier the opportunity to be heard, the right to counsel, and a description of the animals at issue and the rules or policies allegedly violated constitute sufficient process to meet constitutional safeguards. In other words, considering Messonnier's interest in retaining his veterinary license, the government's interest in maintaining the integrity of its investigation and the confidentiality of the complainant, and the inability of the informal proceeding, standing alone, to result in the revocation of his license, we

9

conclude that the Messonnier's due process rights are not violated by the failure of the Board to produce copies of the complaints to him prior to the informal conference. *See Than*, 901 S.W.2d at 930. The trial court erred in holding otherwise and in declaring Section 801.207(b) unconstitutional as applied to Messonnier and others similarly situated. For the same reasons, we also conclude that the trial court erred in declaring Board Rules 575.28 and 575.29 unconstitutional as applied to Messonnier and others similarly situated.

## CONCLUSION

Accordingly, we reverse the trial court's judgment and render judgment that Messonnier's claims for declaratory relief are denied.

/s/ Scott K. Field

Scott K. Field
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.