# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00034-CV

**Texas Department of Motor Vehicles; Raymond Palacios;
Robert "Barney" Barnwell, III; Luanne Caraway; Brett Graham;
Kate Hardy; Blake Ingram; Gary Painter; Guillermo "Memo" Trevino;
John Walker; John Walker, III; and Whitney Brewster, Appellants**

**v.**

**Fry Auto Services; Auto Title Services; Auto Title Services of Oak Hill;
San Antonio Auto Title Services, Inc.; Texas Auto Title; Texas Tag and Title, Inc.;
Tisdale LLC; and Universal Auto Title Services, Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-16-003995, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

---

## O P I N I O N

This is an interlocutory appeal from the trial court's denial of a plea to the jurisdiction

in a case challenging a Transportation Code provision and associated administrative rules governing

the collection of vehicle title and permit fees by deputy tax assessor-collectors. Appellees, private

companies that have been deputized by their local tax assessor-collector's office to collect vehicle

title and registration fees, sued Appellant the Texas Department of Motor Vehicles and its board

members (collectively, "the DMV") to enjoin enforcement of the statute and administrative rules.

For the reasons explained below, we will reverse the district court's order as to certain claims

pleaded by the deputies, render judgment dismissing those claims, and affirm the remainder of

the order.

## Statutory and Regulatory Framework

For counties with a population greater than 10,000 inhabitants, Texas taxes are administered at the county level through the office of an "assessor-collector" elected by residents of that county. Tex. Const. art. VIII, § 14(a). The Texas Constitution requires the assessor-collector to "perform all the duties with respect to assessing property for the purpose of taxation and of collecting taxes, as may be prescribed by the Legislature." *Id*. § 14(c). As relevant here, the Texas Legislature has tasked the county assessor-collectors with accepting applications for and collecting the required taxes and fees to title and register motor vehicles in Texas. *See* Tex. Transp. Code §§ 501.023 (application for title), 502.040 (registration requirements). The DMV is the state agency responsible for actually issuing titles and registering the motor vehicles as required by the Transportation Code. *See id.* §§ 501.001–.179 ("Certificate of Title Act"), 502.001–.492 ("Registration of Vehicles").

To process vehicle registration and title transactions, the DMV has developed a statewide Registration and Title System (RTS). RTS contains the State's vehicle registration and titling records and is the official record of vehicle ownership in Texas. *See* Tex. Transp. Code § 501.173(b) (official record); Tex. Dep't of Motor Vehicles, *TxDMV's Registration and Titling System Begins Technology Overhaul* (June 13, 2013) (explaining RTS). The DMV, in turn, allows county tax assessor-collectors and their agents to access the RTS using DMV-provided equipment to fulfill their titling and registration duties. *See* 43 Tex. Admin. Code § 217.71 (2018) (DMV, Automated and Web-Based Vehicle Registration and Title Systems).

According to the parties, local county assessor-collectors have been "deputizing" private companies to process vehicle title and permitting—including by accessing the RTS through direct-access RTS terminals—for about half a century, but the first legislative pronouncement on the practice occurred in 1995, when the Legislature specifically authorized county assessor-collectors to "deputize an individual or business entity to . . . issue motor vehicle registration receipts and prepare or accept applications for title transfers as a full-service deputy." Act of May 1, 1995, 74th Leg. R.S., Ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1490 (former Tex. Transp. Code § 502.112(a)) (hereinafter "Former Tex. Transp. Code § 502.___"). Under this legislation, private full-service deputies were required to "accept any application for registration, registration renewal, or title transfer" in exchange for "an additional . . . fee not to exceed $5 for each . . . registration issued." *Id.* § 502.114. The delegation to a full-service deputy was to be made under the county assessor-collector's discretion, "in the manner the assessor-collector considers appropriate." *Id.* § 502.114(c). Under this legislative scheme (and before), the deputies directly entered title and registration information into the statewide RTS, collected and remitted all public fees to the government, and charged an additional fee for their services.

In 2013, the Legislature revised the Transportation Code's regulatory structure for titling and registration deputies by giving regulatory authority over the deputies as follows:

> The board by rule shall prescribe:
> (1)    the classification types of deputies performing titling and registration duties;
> (2)    the duties and obligations of deputies;
> (3)    the type and amount of any bonds that may be required by a county assessor-collector for a deputy to perform titling and registration duties; and
> (4)    the fees that may be charged or retained by deputies.

3

Act of May 26, 2103, 83d Leg., R.S., ch. 1135, § 90, 2013 Tex. Gen. Laws 2705, 2723 (codified at Tex. Transp. Code § 520.0071(a)). The county assessor-collectors retained the authority to "deputize an individual or business entity to perform titling and registration services," but had to do so "in accordance with rules adopted under Subsection (a)." *See* Tex. Transp. Code § 520.071(b).

As required by the 2013 legislation, the DMV adopted administrative rules to implement the requirement that it regulate title and registration deputies. *See* 43 Tex. Admin. Code §§ 217.161–.168 (2018). These rules specify that the full statutory and rule-based requirements for serving as a deputy must be complied with from January 1, 2017. *See id.* § 217.161 (DMV, Purpose and Scope). The new rules require that the person be trained and competent, complete an application specified by the tax assessor-collector, and maintain a separate accounting of the fees collected and remitted to the county and a record of daily receipts. *See id.* § 217.163 (DMV, Full Service Deputies).

The DMV's rules also specify the amounts to be retained by deputies: "For each . . . title transaction processed . . . [a] full service deputy may charge the customer a fee of up to $20, as determined by the full service deputy and approved by the tax assessor-collector. The full service deputy retains the entire fee charged to the customer." *Id.* § 217.168(b)(1). Similarly, "[f]or each registration transaction processed . . . [a] full service deputy may . . . retain $1 from the processing and handling fee . . . and . . . charge a convenience fee of $9[.]" *Id*. § 217.168(c)(1)(B). According to the DMV, this effects two significant changes: first, the amount of the fee on title transactions is to be approved by the tax assessor-collector; and second, there is a cap on the fees that can be charged. Thus, for title transactions a customer will pay the appropriate title fee, plus up to $20 that

may be retained by the deputy. And for registrations, the deputy will retain $1 of the $4.75 fee and also be allowed to charge an additional $9.

**Background**

Appellees are private companies that have been appointed as full-service deputies by county tax collectors in Bexar and Travis counties to process automobile titles and registrations. As noted, Appellees enter title and registration information into the RTS and collect all the required fees and taxes associated with the title and registration. Appellees charge their customers an extra fee—in addition to the taxes and fees paid to the State—for completing the title and registration services they perform. Appellees contend that their customers are willing to pay the extra fees to have Appellees perform these services because it allows the customers to avoid the hassle of going to their local tax office to title or register vehicles. Appellees emphasize that they receive no public funds and operate as small businesses. They assert that the extra fees they charge are driven by market forces.

Unhappy that, among other things, the DMV's new deputy rules set what they deem as unacceptable caps on the fees the deputies can charge their customers, Appellees sued the department and its board members, seeking declaratory judgment that—

- Transportation Code section 520.0071 is unconstitutional because it is an economic regulation that violates the Texas Constitution's substantive due-course-of-law protections and because it constitutes an improper delegation of authority to DMV;

- the DMV's deputy rules are invalid under section 2001.038 of the Administrative Procedure Act, *see* Tex. Gov't Code § 2001.038(a) (authoring challenge to validity or applicability of a rule where rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege);

5

- the DMV's board members acted ultra vires in adopting the deputy rules because Transportation Code section 520.0071 is unconstitutional; and

- the DMV's "staff-directed RTS Contract Addendum" is a rule that was adopted in violation of the APA's rule-making provisions.

The DMV filed a plea to the jurisdiction challenging Appellees' standing, their lack of a constitutionally protected property or liberty interest to support a substantive due-process claim, and their failure to plead a proper ultra vires claim, among other objections. The district court denied the DMV's plea to the jurisdiction, and this interlocutory appeal ensued. *See* Tex. Gov't Code § 51.014(a)(8).

## Discussion

The DMV raises three issues on appeal, arguing that the district court erred in denying its plea to the jurisdiction because (1) Appellants have failed to assert a viable constitutional challenge to Chapter 520 of the Transportation Code, which gives the DMV control over the deputization of private companies to provide motor-vehicle title transfer and registration services; (2) Appellants have failed to state a proper ultra vires claim against the DMV's board members; and (3) the challenged contract addendum is not a "rule" within the meaning of section 2001.038 of the APA such that it can be challenged under that provision. The DMV does not challenge in this appeal the district court's denial as to Appellees' APA section 2001.038 claims.

**Standard of review**

Where a plea to the jurisdiction based on sovereign immunity challenges the pleadings, as DMV's does here, we must determine whether the plaintiff's petition has alleged facts

6

that affirmatively demonstrate the court's jurisdiction to hear the cause. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.*

**Due-course-of-law challenge**

As part of its first appellate issue, the DMV asserts that the district court lacks jurisdiction over Appellees' due-course-of-law claim because that claim is not viable. Specifically, the DMV argues that Appellees' claim is not viable because they have no liberty or property interest that is entitled to due-course protection. *See Honors Acad., Inc. v. Texas Educ. Agency*, ___S.W.3d___, No. 16-0519, 2018 WL 1975025 at *18 (Tex. April 27, 2018) (affirming dismissal of due-course claims for lack of jurisdiction where parties asserting a claim lacked vested property rights). We agree.

The Texas Constitution's due-course clause provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities . . . except by the due course of law of the land." Tex. Const. art. I, § 19.[1] "'Before any substantive or procedural due-process rights

---

[1] Although the Texas Supreme Court has explained that the terms "due course" and "due process" are "without meaningful distinction," *University of Tex. Med. Sch. at Hous. v. Than*,

7

attach, however, the citizen must have a liberty or property interest that is entitled to constitutional protection.'" *See Honors Acad.*, 2018 WL 1975025 at *4 (quoting *Klumb v. Houston Mun. Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015)). Appellees contend that their positions as deputies give them an economic liberty interest similar to that described by the Texas Supreme Court in *Patel v. Texas Dep't. of Licensing & Regulation*, 469 S.W.3d 69 (Tex. 2015). Specifically, they assert that section 520.0071 and its accompanying rules are economic regulations that deprive them of their "right to pursue a lawful calling 'free from unreasonable governmental interference.'" *See id.* at 93 (Willett, J., concurring) (quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959)). But the DMV contends, and we agree, that Appellees do not possess a constitutionally protected right to a particular amount of profit realized from performing public services on the government's behalf that prevents the Legislature from imposing statewide control over the full-service deputies.

The Texas Constitution's due-course clause protects our liberty—including the economic liberty addressed in *Patel*—from government infringement because "[l]iberty is not *provided* by the government; liberty *preexists* free government." *Id.* at 92–93 (emphases in original). But the "lawful calling" Appellees seek to pursue here exists only because the Legislature authorized a scheme under which private entities and persons are permitted to perform a public service on the government's behalf. Stated differently, Appellees' "lawful calling," unlike that protected in *Patel*, is wholly a creation of the government. As such, it does not fall under the shield of economic liberty addressed in *Patel*. *See Hegar v. Texas Small Tobacco Coal.*, 496 S.W.3d 778, 788 n. 35

901 S.W.2d 926, 929 (Tex. 1995), we use "due course" here because Appellees' claims are based solely on the Texas Constitution's due-course clause.

8

(Tex. 2016) (explaining that *Patel's* holding is "properly limited to the particular legal framework[]

in which [it] arose").

And to the extent that Appellees argue that they have a property interest at issue here,

whatever interest they may or may not have is not constitutionally protected because it is not vested

in Appellees. *See Honors Acad.*, at \*4 (noting that only vested property rights are constitutionally

protected). "To have a constitutionally protected property interest, a person must have a 'legitimate

claim of entitlement' rather than a mere 'unilateral expectation.'" *Id.* at \*4 (quoting *Board of

Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "[A] 'vested right' is 'something more

than a mere expectancy based upon an anticipated continuance of an existing law.'" *Id.* (quoting

*City of Dallas v. Trammell*, 101 S.W.2d 1009, 1014 (Tex. 1937)). Before the 2013 enactment, the

county tax-assessors could have terminated plaintiffs' access to the RTS at any time. Because access

to the RTS and the business of providing a governmental function were always subject to being

withdrawn by the government, with no attendant judicial process, there is no vested right at issue in

this case. In fact, the Constitution requires the county tax-assessors to comply with legislative

mandates. *See* Tex. Const. art. VIII, § 14. If the Legislature, rather than the DMV, ordered the tax

assessor-collectors to impose standardized rates, the change would have occurred in just the same

manner. Any particular rate of return could thus have been cut off by the tax assessor-collectors

pursuant to statute before the Department's actions. And the Legislature has the same abilities now.

There is, therefore, no vested right that is constitutionally protected against legislative enactment or

against the Department's actions regarding rates.

Because Appellees lack a constitutionally protected property or liberty interest, the trial court lacked jurisdiction over Appellees' due-course challenge to Chapter 520. *See Honors Acad.*, at *4–9 (affirming appellate court's dismissal of non-viable constitutional claims). Accordingly, we sustain the DMV's first issue on appeal.

**Unconstitutional delegation claim**

Under well-established Texas law, the Legislature may delegate its powers to administrative agencies established to carry out legislative purposes as long as the Legislature establishes reasonable standards to guide the agencies in exercising those powers. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000) (citing *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 466 (Tex. 1997)); *see also Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995) (upholding a delegation to the Commissioner of Education to adopt rules "necessary for the implementation of" Chapter 36 of the Education Code); *Housing Auth. v. Higginbotham*, 143 S.W.2d 79, 87 (Tex. 1940) (upholding a statute giving a housing authority the power to, among other things, condemn property and to select housing for tenants). A delegation of authority that does not establish reasonable standards to guide the agencies in exercising those powers—i.e., a standardless delegation—is, thus, unconstitutional. *See id.*

Appellees allege that section 520.0071 is an unconstitutional delegation of legislative authority because it "gives no direction whatsoever as to what standards [the DMV] should follow in prescribing the duties, bonds, or prices of the" auto-title companies. Appellees relatedly contend that section 520.0071's delegation of authority violates the Texas Constitution's requirement that the Legislature itself prescribe to tax assessor-collectors their assessing and collecting duties: "An

10

assessor-collector of taxes shall hold office for four years; and *shall perform all the duties* with respect to the assessing property for the purpose of taxation and collecting taxes, *as may be prescribed by the Legislature*." Tex. Const. art. VIII, § 14(c) (emphases added).

On appeal, the DMV asserts, also as part of its first issue, that Appellees' delegation claims are not viable because the claims do not challenge the entirety of the Legislature's deputy scheme. Specifically, the DMV contends that while section 520.0071 standing alone may seem to be a standardless delegation, when that provision is read in context, it is not standardless because subtitle A of the Transportation Code sets out an elaborate regime of public fees for title-processing functions that are binding on the county tax assessor-collectors. *See* Tex. Transp. Code §§ 501.001–520.063. But whether the DMV is correct in its interpretation of Chapter 520 goes to the merits of Appellees' delegation claim—i.e., does the Legislature's delegation lack the standards necessary to make the delegation constitutional?—and, as such, is not a proper inquiry in our review here. *See Miranda*, 133 S.W.3d at 226–28. And even if we agreed with the DMV's argument, Appellees would be entitled to a reasonable opportunity to cure any such jurisdictional defect because their pleadings do not affirmatively negate jurisdiction. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) (noting that pleader entitled to "reasonable opportunity to amend" pleadings unless "the pleadings affirmatively negate the existence of jurisdiction") (citing *Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004); *Miranda*, 133 S.W.3d at 226–27; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

We hold that the trial court did not err in denying DMV's plea to the jurisdiction as to the delegation claim and therefore overrule the DMV's challenge.

11

**Impairment-of-contract and equal-protection claims**

Also as part of its first issue, the DMV challenges the trial court's jurisdiction over Appellees' claim that section 520.0071 impairs Appellees' ability to contract with their customers, *see* Tex. Const. art. I, § 16 ("No . . . law impairing the obligation of contracts . . . shall be made."), and over Appellees' equal-protection claim. In their brief to this Court, Appellees explain that they have not urged either of these types of claims in the underlying case. Accordingly, we need not address these sub-issues.

**Ultra vires**

According to Appellees' pleadings, the DMV officials acted ultra vires by adopting price-control rules pursuant to an unconstitutional statutory provision. Stated differently, Appellees maintain that if, as they contend, section 520.0071—the statute authorizing the adoption of the price-control rules—is an unconstitutional delegation of authority, the DMV officials lacked the authority to adopt the rules they adopted. In its second issue on appeal, the DMV challenges the trial court's jurisdiction over Appellees' ultra vires claim, arguing that the DMV officials did not act ultra vires because they had express statutory authority under section 520.0071 to adopt rules and that those rules are properly challenged only through the APA. In their brief to this Court, Appellees emphasize that, for the very reasons urged by the DMV, Appellees have raised their ultra vires claim only in the context of a section 2001.038 rule challenge. Accordingly, and because the DMV has explained that, except as discussed below, it is not challenging Appellees' section 2001.038 claims in this appeal, we need not address the DMV's second issue.

**Contract addendum**

In their pleadings below, Appellees challenge the validity of the RTS contract addendum under section 2001.038 of the APA, which authorizes certain challenges to the validity or applicability of agency rules. *See* Tex. Gov't Code § 2001.038(a). Specifically, Appellees contend that the RTS contract addendum is invalid because it is an agency rule that was not adopted in compliance with the APA's rulemaking procedures. *See id.* §§ 2001.021–.041 (setting forth requirements for agency rulemaking). In its final issue on appeal, the DMV asserts that the trial court lacks jurisdiction over Appellees' section 2001.038 challenge because the contract addendum is not a rule, but simply a limitation on private persons' use of public property. We agree that the contract addendum is not a rule, and thus is not subject to a 2001.038 challenge. *See Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 545 (Tex. App.—Austin 2011, pet. denied) (noting that "whether or not the challenged agency action is a 'rule'" is one of the variables that controls whether the trial court has subject-matter jurisdiction to entertain such a challenge by virtue of section 2001.038").

Under the APA, the term "rule" is defined as "a state agency statement of general applicability that: (i) implements, interprets, or prescribes law or policy; or (ii) describes the procedure or practice requirements of a state agency." Tex. Gov't Code § 2001.003(6). The contract addendum is not a statement of general applicability because it is a limitation on a private person's use of public property; it does not affect the interest of the public at large. *See El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008) ("The term 'general applicability' under the APA references 'statements that affect the interest of the public at large such

13

that they cannot be given the effect of law without public input.'" (quoting *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003))).

Appellees argue that the contract addendum is a statement of "general applicability" because it applies to all full-service deputies. In making this argument, they rely on the supreme court's holding in *El Paso Hospital District* that the HHSC statement at issue was a rule because it applied to "all hospitals." *See id.* at 714. But this argument ignores that the contract addendum, at its core, simply establishes that DMV owns the RTS and related equipment and defines the terms and use of that DMV-owned property. It does not, as did the rule in *El Paso Hospital District*, affect any right belonging to the deputies. *See id.* at 714–15 (noting that rule affected "the Hospitals' right to reimbursement"); *see also id.* at 714–15 (discussing subsection 2001.003(6)(C) of definition of "rule," and noting that alleged rule must "affect[] the Hospitals' private rights").

We sustain the DMV's third issue.

## Conclusion

Having sustained two of the DMV's issues on appeal, we reverse the portions of the trial court's order denying the DMV's plea to the jurisdiction as to Appellees' due-course challenge to Chapter 520 of the Transportation Code and as to Appellees' rule challenge to the contract-addendum, and we render judgment dismissing those claims. We affirm the remainder of the order.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed in Part, Reversed and Rendered in Part

Filed: August 10, 2018

14