

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00211-CV

_____

IN THE MATTER OF THE ESTATE OF MICHAEL SHANNON CLARK II,
DECEASED

On Appeal from the County Court
Parker County, Texas
Trial Court No. 18P318

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

This is an appeal from an order entered by a county court exercising probate jurisdiction. *See* Tex. Est. Code Ann. § 32.002(a).[1]  Appellant Amy R. Clark is the surviving spouse of the estate's decedent and served as dependent administrator of the estate before she was removed from that role by the county court.  This appeal involves narrow questions of (1) whether the county court erred by vacating an order that provided Clark a family allowance without giving Clark notice of the court's intent to do so and an opportunity to argue why the order should not be vacated and (2) whether the county court lacked jurisdiction and statutory authority to vacate the order.  We have before us only Clark's arguments because no Appellees' brief was filed by the heirs.  We sustain Clark's second issue and conclude that the county court deprived her of due process by not giving her notice that the court would consider vacating the family-allowance order.  We do not resolve Clark's first issue challenging the county court's jurisdiction to vacate the family-allowance order nor her third issue arguing that the county court had no statutory authority to vacate the order on its own motion.  *See* Tex. R. App. P. 47.1.  Accordingly, based on the sole issue that we address and sustain, we reverse the county court's April 3, 2020 order vacating its

---

[1]Section 32.002(a) provides that "[i]n a county in which there is no statutory probate court or county court at law exercising original probate jurisdiction, the county court has original jurisdiction of probate proceedings."  Tex. Est. Code Ann. § 32.002(a).

June 21, 2019 family-allowance order, and we remand this matter to the county court for further proceedings.

## II. Factual and Procedural Background

The clerk's record in this matter appears to contain all the relevant filings from the probate of the decedent's estate, and we use it to chart the path of the underlying proceedings. Clark was appointed dependent administrator of the estate of her late husband. Other heirs initially contested Clark's appointment and filed a counterapplication to be appointed dependent co-administrators. The other heirs later withdrew their application. During the year following Clark's appointment as dependent administrator, she filed an inventory and various applications to sell or abandon property. The county court entered orders approving the inventory and the various requests to dispose of or to distribute property.

One of the applications filed during this period sought payment of a family allowance to Clark. The family-allowance application sought an allowance for Clark as the decedent's surviving spouse but stated that social security payments provided sufficient support for the child born of the decedent and Clark's marriage. The application stated that Clark should receive the estate's share of certain real and personal property in payment of the family allowance, including real property that was described as having a value of $275,000 and a total equity of approximately $180,000. In addition to the property listed in the family-allowance application, Clark sought an additional allowance of approximately $40,000 in cash. The County Judge signed an

3

"Order for Family Allowance" on June 21, 2019, which granted the relief requested in the family-allowance application. That order provided partial payment of the family allowance; Clark was to receive $90,000 from the sale of the estate's share of the real property listed in the family-allowance application and $40,379 in cash as funds became available. After filing the family-allowance application, Clark also filed an application to sell the listed real property. On the same date that the county court signed the family-allowance order, it also signed an order for the sale of the real property.

Several months after the entry of the family-allowance order, the county court began entering orders indicating that something had gone awry in the estate's administration. A report of the sale of the real property described in the family-allowance application was filed and indicated that the property had sold for $460,000—an amount in excess of the $275,000 value listed in both the family-allowance application and the inventory filed after the order authorizing the sale of the property was signed. The report indicated that the net proceeds from the sale totaled approximately $342,000, which (after deduction of Clark's community one-half interest in those proceeds) left proceeds of approximately $171,000—an amount well in excess of the $90,000 in equity and $40,379 in cash that the family-allowance order provided for Clark. The report stated that "[t]he proceeds from the sale of the property shall be paid to AMY R. CLARK, as partial payment of the [f]amily [a]llowance approved by the [c]ourt on June 21, 2019."

4

The county court entered a decree confirming the sale of the real property. In one provision, the decree provided "that all proceeds from such sale be paid directly to AMY R. CLARK as partial payment of the amount due her pursuant to the [f]amily [a]llowance approved by this [c]ourt." But the decree also contained a provision that appears to have been added by the county court: "Proceeds of sale shall be placed in the [r]egistry of the [c]ourt immediately as proceeds are received." On the same day that the county court signed the decree approving the sale of the real property, it signed an order vacating that decree. Three days later, on April 3, 2020, the county court signed an order vacating its prior family-allowance order. This vacating order provided that "[a] hearing will be held on setting the amount."

The county court then signed a new order confirming the sale of the real property. The new order contained a provision stating,

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all proceeds from such sale be paid as follows:
>
> 1. One-half of the total proceeds to AMY R. CLARK as her community interest in such property; and
>
> 2. The balance shall be placed in the Parker County Registry of the Court immediately as proceeds are received.

Clark challenged the county court's order vacating the family-allowance order by filing a motion (also styled as a motion for new trial) to vacate it. This motion contended that the county court could not vacate the family-allowance order because it was a final order in the context of the probate proceeding and that it violated public

5

policy to retrospectively vacate a family-allowance order. The county court denied the motion.

In the interim between the filing of the motion to vacate the order vacating the family-allowance order and the signing of the order denying that motion, the county court signed a show-cause order issued on its own motion to determine whether Clark should be removed as "[d]ependent [e]xecutrix [sic]." On the same day that the county court denied Clark's motion challenging the order vacating the family-allowance order, the county court removed her as dependent administrator and appointed a successor administrator.

Clark filed a notice of appeal directed at the order vacating the family-allowance order. A few days after the notice of appeal was filed, some heirs of the estate filed a response to the appeal, alleging that Clark had mismanaged the estate and had exaggerated the claims that were the basis of the original order granting the family allowance.[2]

---

[2]Chapter 353 of the Estates Code governs family allowances. Section 353.101 of the Estates Code provides that

> immediately after the inventory, appraisement, and list of claims of an estate are approved or after the affidavit in lieu of the inventory, appraisement, and list of claims is filed, the court shall fix a family allowance for the support of the decedent's surviving spouse, minor children, and adult incapacitated children.

Tex. Est. Code Ann. § 353.101(a). The Estates Code also provides that a surviving spouse may file an application, and at the hearing of the application, the applicant

6

## III. Analysis

### A. We set forth the standards of notice required by due process.

In her second issue, Clark contends that the county court violated her due process rights by failing to give notice that it intended to consider vacating the family-allowance order and by failing to give her an opportunity to be heard on the issue before vacating the family-allowance order. We agree and remand this matter to the county court to conduct a hearing on the question of whether the court has jurisdiction to vacate the family-allowance order and whether it should vacate the order after according Clark notice and an opportunity to be heard on these issues.

---

bears the burden of proof. *Id.* § 353.101(b), (c). The Estates Code sets forth the following criteria for setting the amount of the allowance:

> (a) The amount of the family allowance must be sufficient for the maintenance of the decedent's surviving spouse, minor children, and adult incapacitated children for one year from the date of the decedent's death.
>
> (b) The allowance must be fixed with regard to the facts or circumstances then existing and the facts and circumstances anticipated to exist during the first year after the decedent's death.
>
> (c) The allowance may be paid in a lump sum or in installments, as ordered by the court.

*Id.* § 353.102. After the amount of the allowance has been fixed, the Estates Code requires the court to enter an order that "(1) states the amount of the allowance[,] (2) provides how the allowance shall be payable[,] and (3) directs the executor or administrator to pay the allowance in accordance with law." *Id.* § 353.103. Other provisions of Chapter 353 establish the preference for payment of the allowance, how the allowance is paid, the property from which the allowance may be satisfied, and when property may be sold to satisfy the allowance. *Id.* §§ 353.104–.107.

The Texas Supreme Court has explained why notice is a vital component of due process as follows:

> Most critically, a lack of notice violates basic principles of due process. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84, 108 S. Ct. 896, [899] (1988) (explaining that a "[f]ailure to give notice violates [']the most rudimentary demands of due process of law[']" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S. Ct. 1187, [1190] (1965))). Due process demands that a party be afforded "an opportunity to be heard at a meaningful time and in a meaningful manner." *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, [902] (1976)).

*Highsmith v. Highsmith*, 587 S.W.3d 771, 777–78 (Tex. 2019); *see also Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 264 (Tex. 2019) (stating that Texas follows precedent interpreting the federal constitution's Fourteenth Amendment when interpreting Texas's due-course-of-law provision contained in Article I, Section 19 of the Texas Constitution). Indeed, we recently quoted the First Court of Appeals for its concise statement explaining why a trial court's failure to give notice constitutes a deprivation of due process: "A trial court's failure to comply with notice rules in a contested case deprives the defendant of his constitutional right to be present at the hearing, to voice objections in an appropriate manner, and results in a violation of fundamental due process." *M.B. v. R.B.*, No. 02-19-00342-CV, 2021 WL 2252792, at *5 (Tex. App.—Fort Worth June 3, 2021, no pet. h.) (mem. op.) (quoting *Hildebrand v. Hildebrand*, No. 01-18-00933-CV, 2020 WL 4118023, at *4 (Tex. App.—Houston [1st Dist.] July 21, 2020, no pet.) (mem. op.)).

8

The Texas Supreme Court has held in the context of probate proceedings that "procedural due process 'requires notice that is reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests.'" *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). Though they are not precise analogies to the situation before us, when a court takes the significant steps of dismissing a party's claim or sanctioning a party for misconduct, the party has a right to notice, and a sua sponte disposition is improper. *Foster v. Foster*, No. 02-20-00327-CV, 2021 WL 2373329, at *7 (Tex. App.—Fort Worth June 10, 2021, no pet. h.) (mem. op.) (holding that sua sponte dismissal of a party's claims was improper); *Griffin v. Am. Zurick Ins. Co.*, No. 05-19-00630-CV, 2021 WL 1558736, at *5 (Tex. App.—Dallas Apr. 21, 2021, no pet. h.) (mem. op.) (holding that dismissal for want of prosecution requires advance notice); *In re Sw. Pub. Serv. Co.*, No. 13-19-00111-CV, 2020 WL 1887762, at *25 (Tex. App.—Corpus Christi–Edinburg Apr. 16, 2020, orig. proceeding) (mem. op.) ("The rules and due process require notice and [a] hearing before the imposition of sanctions."). Further, it appears that the notice provisions of the Texas Rules of Civil Procedure apply to probate proceedings unless there is a specific rule to the contrary. *See Cunningham*, 660 S.W.2d at 812 ("The Texas Rules of Civil Procedure govern proceedings in probate matters except in those instances in which a specific provision has been made to the contrary." (citing Tex. R. Civ. P. 2)); *In re Estate of Hoelzer*, 310 S.W.3d 899, 902 (Tex. App.—Beaumont 2010,

9

pet. denied) ("The Texas Rules of Civil Procedure apply in probate matters unless the rules conflict with specific provisions in the Probate Code.").

On the issue of notice, we presume that trial courts hear matters only after having given proper notice. *See Hildebrand*, 2020 WL 4118023, at *4. "To rebut this presumption, an appellant must affirmatively show a lack of notice, which generally requires affidavits or other competent evidence showing that he did not receive proper notice." *Id.*

**B.     Clark was entitled to notice before the county court vacated the family-allowance order.**

On the question of whether Clark was entitled to notice, we do not know what prompted the county court to vacate the family-allowance order. Two events appear to coincide with the entry of the order vacating the family-allowance order: (1) the real property referenced in the family-allowance order was sold for a higher price than the market value it was represented to have in the family-allowance application, and (2) something prompted the court to remove Clark as dependent administrator. Whatever its reasoning for vacating the family-allowance order, which had been entered months before and which had accorded Clark rights in specific property that was part of the estate, the county court should have given notice to Clark beforehand to alert her that it was considering vacating the order that gave her those rights and to allow the opportunity to make her arguments regarding why the court should not rescind its prior order.

**C.** **The record adequately establishes that Clark did not receive notice.**

As to whether Clark proved that she did not receive notice, she presented no affidavit stating that the county court had failed to give notice so that she could voice her objection to the court's action of withdrawing the allowance order. But in this case, the clerk appears to have included in the clerk's record every relevant document that was filed in the probate proceeding. Nothing in the pleadings included in the record, on the included docket sheet, or in the included case summary indicates that the county court gave notice of an intent to vacate the family-allowance order or accorded Clark an opportunity to be heard before it took that action. Further, the order vacating the family-allowance order contains no recitation that the order was entered after notice to Clark or a hearing. Instead, the order recites only that "[a] hearing will be held on setting the amount," which apparently means that the county court would hold a hearing to set a new amount for the family allowance.

Generally, courts presume that a trial court acts only after giving notice, and in matters such as a bill of review, if the record is silent that notice was given, there is no error on the face of the record. *Richardson v. Sims*, No. 01-15-01115-CV, 2016 WL 5787291, at *2 (Tex. App.—Houston [1st Dist.] Oct. 4, 2016, no pet.) (mem. op.). Thus, "[a]n appellant who alleges failure to give proper notice of trial carries a heavy burden[] because the record will usually be barren of affirmative proof of this type of error." *Id.* Also, appellate courts can often look to a recitation in a judgment that

notice was given, and such a recitation provides "some evidence that proper notice was given." *Id.* But there is no presumption of notice in a default-judgment situation, and "[i]n an attack upon a default judgment, [even] a recitation of due service in the judgment does not lead to a presumption of due service." *Lease Fin. Grp., LLC v. Childers*, 310 S.W.3d 120, 125 (Tex. App.—Fort Worth 2010, no pet.).

Here, there is no recitation of notice in the order vacating the family allowance. Also, although this is not a default situation, a party had rights—which were established by an order entered months earlier—adjudicated so that they no longer existed. The circumstances before us present a unique situation where a court has entered an order sua sponte that divests Clark of rights provided in an order entered months earlier, and neither the clerk's record nor the order itself provides any suggestion that Clark was given notice that this action might be taken. We conclude that this combination of unique circumstances provides some competent evidence that the county court took its action without notice to Clark.[3]

---

[3]In her first issue, Clark argues that the county court lacked jurisdiction to vacate the family-allowance order because it was an appealable order under the standards for determining finality of an order in a probate proceeding and because the time for appealing the order had passed. *See In re Guardianship of Macer*, 558 S.W.3d 222, 226–27 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (stating that "to determine whether a probate court order is final for purposes of appeal, we first give controlling effect to an express statute declaring the phase of the probate proceeding to be final and appealable" and that "[i]f no express statute controls, a probate court order is final and appealable only if it 'dispose[s] of all parties or issues in a particular phase of the proceedings'" (citing and quoting *De Ayala v. Mackie*, 193 S.W.3d 575, 578–79 (Tex. 2006) (op. on reh'g))). Clark also cites a number of older Texas cases holding that an allowance order is a final order. *See Butler v. Summers*, 248 S.W.2d 227,

## IV. Conclusion

We sustain Clark's second issue and hold that the county court erred by vacating the June 21, 2019 family-allowance order without giving Clark notice that the court was considering vacating the family-allowance order and without giving her an opportunity to present argument and evidence on the question of why the family-

230 (Tex. App.—Dallas), *rev'd on other grounds*, 253 S.W.2d 418 (Tex. 1952); *Story v. Story*, 154 S.W.2d 881, 882 (Tex. App.—Dallas 1941, no writ); *M. Garcia Gomez & Champion v. Longoria*, 142 S.W.2d 584, 585 (Tex. App.—San Antonio 1940, writ dism'd judgm't cor.); *King v. Battaglia*, 84 S.W. 839, 843 (Tex. App. 1905, writ ref'd). This line of authority is not without exception. *See Butler*, 253 S.W.2d at 421–22 (permitting challenge to final allowance order when application for allowance misrepresented homestead character of property). Further, more recent authority notes that although a probate order may be final for purposes of appeal, the order may remain interlocutory such that the probate court retains plenary jurisdiction to reconsider it. *See Estate of Harris*, No. 02-19-00333-CV, 2021 WL 832721, at *5 (Tex. App.—Fort Worth Mar. 4, 2021, pet. denied) (mem. op.); *Guardianship of Macer*, 558 S.W.3d at 231. *Contra In re Doggett*, No. 12-19-00300-CV, 2019 WL 5956676, at *4 (Tex. App.—Tyler Nov. 13, 2019, orig. proceeding) (mem. op.); *Estate of Brazda*, 582 S.W.3d 717, 731 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *In re Jacky*, 506 S.W.3d 550, 555 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding). At this point, we cannot glean from the record the county court's reasons for vacating the allowance order, i.e., whether it was simply acting to enforce its prior order in view of the subsequent events or was issuing an order inconsistent with the original family-allowance order. *See Doggett*, 2019 WL 5956676, at *4 ("And although a trial court has the authority to enforce its judgment after plenary power expires, 'the trial court may not issue an order that is inconsistent with the judgment or that otherwise constitutes a material change in the substantive adjudicative portions of the judgment.'"). Thus, we lack the information necessary to render a judgment on the jurisdictional question, and we remand the case for Clark to be able to present her jurisdictional argument to the county court. *See* Tex. R. App. P. 43.3(a) ("When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when . . . a remand is necessary for further proceedings[.]").

Nor do we reach Clark's third issue contending that the county court lacks the statutory authority to vacate an allowance order on its own motion. Again, that is an issue that should first be considered by the county court after Clark is given notice.

allowance order could or should not be vacated. We reverse the county court's April 3, 2020 order vacating its June 21, 2019 family-allowance order, and we remand this matter to the county court for further proceedings consistent with this opinion.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: July 15, 2021