**Affirmed and Memorandum Majority and Concurring Opinions filed December 2, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00463-CV

---

### CHRISTOPHER MICHAEL DUPUY, Appellant

### V.

### HEATHER RENE WILLIAMS, Appellee

---

**On Appeal from the 280th District Court
Harris County, Texas
Trial Court Cause No. 2019-18982**

---

## MEMORANDUM MAJORITY OPINION

Appellant Christopher Michael Dupuy appeals a lifetime protective order regarding appellee Heather Rene Williams. Dupuy contends that the trial court violated his due process rights because (1) the protective order is a default order but the record fails to demonstrate strict compliance with procedural rules, and (2) an answer had been filed at the time the court signed the order. In a final issue, Dupuy argues that the trial court erroneously denied his motion for new trial.

After a thorough record review, we conclude that Dupuy has not shown, and the record does not reflect, a due process violation or any prejudicial noncompliance with the relevant rules. Further, Dupuy has not demonstrated that the trial court abused its discretion in denying his motion for new trial. Accordingly, we overrule Dupuy's issues and affirm the protective order.

## Background

Williams filed an application for a protective order against Dupuy under Code of Criminal Procedure Chapter 7A, alleging that Dupuy engaged in stalking and harassing conduct. In the affidavit attached to her application, Williams averred that Dupuy was the attorney for her ex-boyfriend during a child custody case.[1] She said that during the proceeding Dupuy asked her "intrusive and inappropriate sexual questions in both written form and during a deposition." According to Williams, the judge presiding over the custody matter ordered that Dupuy not be allowed around her child. She averred that appellant committed, or she believed him to have committed, numerous acts of stalking or harassment, including the following:

- Around September 6, 2016, Dupuy contacted Williams's school and "tried to obtain personal information about her." The school's "legal personnel" notified her because they believed he was trying to obtain the information to harass her.

- Around April 14, 2017, Williams saw Dupuy walking behind her when she met her ex-husband at a grocery store to pick up her son. She asked him why he was "stalking" her and he did not respond. She called the police and her father for help; when her father arrived, Dupuy ran away and left in his car. She noticed that he was parked at a nearby gym she visited earlier that morning.

---

[1] Williams refers to both an ex-boyfriend and an ex-husband in her affidavit; it is unclear whether they are the same person. However, Williams's trial testimony reflects that Dupuy was the attorney for her ex-husband during divorce proceedings.

- Around June 5, 2017, Williams returned to her apartment and discovered her front door unlocked and garage door open. She and her son walked outside to take trash to a dumpster, and she saw Dupuy sitting in a parked car. She screamed, and Dupuy backed up, almost hitting her and her son. She thought Dupuy was "going to kill" her.

- Around June 24, 2017, Williams came home and discovered that someone had broken into her apartment and poured bleach on her clothes, shoes, and bed. She believed Dupuy committed these acts.

- Around August 19, 2017, Williams left her apartment complex in her car and discovered Dupuy following her. She took photos and a video of him following her.

- Around the first week of November 2017, Williams received several phone calls from an unknown number; she answered one call and a voice said, "You're going to die soon." She believed Dupuy made these calls. She filed for a protective order with the Harris County District Attorney's Office, but the Office was unable to serve Dupuy after several attempts.

- During May 2018, Dupuy called Williams repeatedly from blocked phone numbers; at one point, she received at least forty phone calls between 11 p.m. and 1 p.m. the next day. When she answered one call as she exited a college class, she recognized Dupuy's voice. He said, "I see you, how was class? You're going to die soon. I'm coming for you!" College personnel later told her that Dupuy requested personal information about her. She reported the incident to police, and Dupuy was charged with stalking and a warrant was issued for his arrest.

- In January 2019, Williams received several hang-up calls from an unknown number, which she believed Dupuy "was behind."

Williams also described several other matters involving Dupuy that increased her concern and fear:

- In summer 2018, Dupuy was arrested in Galveston County on charges of felony online impersonation. Dupuy had stalked and harassed another woman, putting her personal contact information online as part of an escort service. While Dupuy was in jail,

3

Williams's ex-husband visited him and possibly gave him information about her. Dupuy was found guilty of the online impersonation offense and sentenced to six years in prison.

- Before Dupuy was arrested, he put "creepy things on his Facebook page," such as a picture of Christopher Robin and Winnie the Pooh, with the caption, "Do you think they will ever find the bodies Pooh? Let's hope not Christopher . . . . for your sake."

- Dupuy has owned weapons in the past.

- In May 2013, Dupuy was charged with "Obstruction or Retaliation, and Abuse of Official Capacity."

Based on Williams's sworn statements, the trial court signed on March 25, 2019 a temporary ex parte protective order and show cause order (the "TPO"). The TPO prohibited Dupuy from: (1) committing violence against Williams; (2) communicating with Williams except through her attorney; (3) going within 200 feet of Williams's home, place of employment, or school; (4) possessing a firearm; (5) engaging in conduct towards Williams that is likely to harass, annoy, alarm, abuse, torment, or embarrass her; and (6) harming, threatening, or interfering with the care, custody, or control of a pet, companion animal, or assistance animal possessed by Williams or a member of her family or household. The TPO further required Dupuy to appear on April 3, 2019 at 9:00 a.m. to show cause why the court should not issue a permanent protective order against Dupuy. Williams's application for protective order and the temporary protective order and show cause order were served on Dupuy at the Harris County Jail on April 1, 2019 at 12:35 p.m.

Dupuy prepared, pro se, a combined answer, special exceptions, motion to strike, and motion for sanctions, as well as a separate motion for continuance. According to Dupuy, he delivered these documents to jail personnel for mailing on April 3, 2019. The postmark on the envelope containing the documents is dated

4

April 4, and the pleadings were file-stamped by the Harris County District Clerk on April 8.

Dupuy did not appear at the April 3 hearing, during which Williams testified that Dupuy was the attorney for her ex-husband during divorce proceedings and he "fixated" on her. According to Williams, Dupuy followed her and called her for three years. When she first tried to get a protective order in 2017, Dupuy avoided service and went "underground." Her trial counsel presented the court with the affidavit she completed in support of the protective order application as a "shorthand" rendition of her testimony. After hearing Williams's testimony, and her trial counsel's testimony concerning attorney's fees, the court found that Dupuy "engaged in conduct that meets the requirements under Chapter 7A of the Texas Code of Criminal Procedure, the Texas Penal Code Statute 42.072 and 42.07, which is the stalking and harassment statute." The court noted that Dupuy's behavior, "as a previous officer of the Court" was particularly egregious. Because proof of service on Dupuy had not been on file for ten days, however, the trial court extended the TPO. Thereafter, on April 15, the trial court signed a protective order prohibiting Dupuy from engaging in the actions described above for the duration of Williams's lifetime.

Still in jail, Dupuy delivered to jail officials for mailing a motion for reconsideration/motion for new trial on April 24, which was postmarked that same date but not received by the court until April 30. Relevantly, Dupuy argued that he was entitled to a new trial because he was provided less than two days' notice of the hearing, "the return of citation was not on file . . . at the time of [the] hearing," and the State "barred" him from defending himself by allegedly preventing him from appearing at the April 3 hearing.

5

The trial court heard Dupuy's motion on June 4, and Dupuy represented himself at that hearing. During the hearing, Dupuy attempted to show that he filed an answer and motion for continuance on the date of the hearing, but the trial court noted that these filings were postmarked on April 4 and not received by the trial court until April 8. Dupuy also argued that he had no duty to bring himself to court for the protective order hearing. As well, Dupuy repeatedly asserted that Williams fabricated the allegations in her protective order application and affidavit. He further asserted there was no prejudice to Williams or the State if a new trial were granted. At the close of the hearing, the trial court denied appellant's motion for new trial.

Dupuy filed a notice of appeal of the court's "denial of his 'Motion for Reconsideration and in the alternative Motion for New Trial.'"

### Analysis

Dupuy presents four issues for our review, the first three of which amount collectively to due process complaints. He argues that the trial court erred by signing a default order when the record did not affirmatively show strict compliance with the Texas Rules of Civil Procedure. Specifically, he asserts that the trial court erred by signing a default judgment after he filed an answer and without adequate notice of the hearing. In a final issue, Dupuy urges that the trial court erred by denying his motion for new trial because he satisfied the *Craddock*[2] elements.

### A. The Protective Order Is Not Void

In his reply brief, Dupuy argues that the protective order is void because the trial court found him guilty of a crime and the court lacks criminal jurisdiction. Because Dupuy's argument challenges the trial court's jurisdiction, we address it before proceeding to the merits. *See, e.g.*, *Alfonso v. Skadden*, 251 S.W.3d 52, 55

---

[2] *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939).

6

(Tex. 2008) (per curiam) ("Subject-matter jurisdiction cannot be waived, and can be raised at any time.").

The trial court did not find appellant guilty of a crime. Instead, the trial court made the following findings required by Chapter 7A to render a protective order: "[Williams] is the victim of stalking and [Dupuy] has engaged in conduct towards [Williams] as described in Texas Penal Code Sections 42.072 (Stalking), 42.07, and Chapter 7A of the Texas Code of Criminal Procedure . . . and [Dupuy] has stalked and harassed [Williams]." *See* Tex. Code Crim. Proc. art. 7A.03 (requiring that a court must make findings in protective order if there are reasonable grounds to believe that the applicant is the victim of, relevantly, stalking).[3]

Additionally, a plain reading of the statute shows that the 280th District Court of Harris County is a proper court to issue the protective order Williams sought. A protective order pursuant to Chapter 7A could be filed in:

> (1) a district court, juvenile court having the jurisdiction of a district court, statutory county court, or constitutional county court in:
>> (A) the county in which the applicant resides;
>> (B) the county in which the alleged offender resides; or
>> (C) any county in which an element of the alleged offense occurred; or
> (2) any court with jurisdiction over a protective order under Title 4, Family Code, involving the same parties named in the application.

*Id.* art. 7A.01(b). Williams resided in Harris County at the time she filed her protective order application, and the 280th District Court is a dedicated district court

---

[3] Though the relevant provisions of Chapter 7A have been repealed and recodified in Chapter 7B, we refer to the provisions applicable at the relevant time. *See* Act of May 20, 2003, 78th Leg., R.S., ch. 836, § 1, 2003 Tex. Gen. Laws 2622, 2622-23 (repealed 2019) (previously codified at Tex. Code Crim. Proc. ch. 7A, now codified at Tex. Code Crim. Proc. ch. 7B (eff. Jan. 1, 2021)).

in Harris County. *See* Tex. Gov't Code § 24.457; Tex. Code Crim. Proc. art. 7A.01(b)(1)(A). The trial court properly exercised jurisdiction over this proceeding, and the order is not void for lack of subject-matter jurisdiction. *See* Tex. Code Crim. Proc. art. 7A.01(b); *cf. Lopez v. Occhiogrosso*, No. 14-17-00324-CV, 2019 WL 347336, at *3 (Tex. App.—Houston [14th Dist.] Jan. 29, 2019, no pet.) (mem. op.) (concluding that civil district court has jurisdiction over Chapter 7A protective order proceedings even though no criminal judgment adjudicated respondent guilty of offenses alleged in protective order application).

Because Dupuy's jurisdictional complaint lacks merit, we turn to his remaining issues.

**B.      No Due Process Violation**

In his first issue, Dupuy asserts that the "State violated [his] due process rights by refusing him the opportunity to appear at a final hearing that resulted in a default order, and by holding a final hearing less than two (2) days after he was served that failed to give [him] a meaningful time and manner to be heard."

"Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) (citing *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976); *Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). We measure what process is due under a "flexible standard" depending on the "practical requirements of the circumstances." *Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 265 (Tex. 2019) (citing *Than*, 901 S.W.2d at 930). This standard includes:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute

8

procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

In the argument supporting his first issue, Dupuy first contends that his due process rights were violated because he was not given forty-five days' notice of the protective order hearing pursuant to Texas Rule of Civil Procedure 245, citing *In re W.J.M.*, No. 05-18-00825-CV, 2020 WL 813365, at *2-3 (Tex. App.—Dallas Feb. 19, 2020, no pet.) (mem. op.). However, *W.J.M.* is inapposite to today's case: it involved a suit affecting the parent-child relationship. *See id.* *W.J.M.* simply has no bearing on a Code of Criminal Procedure protective order proceeding and the unique procedures established by our legislature for dealing with those cases.

The applicable notice requirements are found by reference to the Code of Criminal Procedure and the Family Code. The trial court granted the application for a protective order based on Code of Criminal Procedure Chapter 7A. *See* Tex. Code Crim. Proc. arts. 7A.01-.07. Chapter 7A authorized certain courts to issue a protective order if an applicant was the victim of any enumerated offenses, including sexual offenses, stalking, and trafficking, without regard to the relationship between the applicant and the alleged offender. *See id.* art. 7A.01. Article 7A.04 generally made the notice requirements that apply to orders issued under Family Code Chapter 84 applicable to orders issued under Code of Criminal Procedure Chapter 7A. *See id.* art. 7A.04 ("To the extent applicable, except as otherwise provided by this chapter, Title 4, Family Code, applies to a protective order issued under this chapter."); Tex. Fam. Code tit. 4, subtit. B ("Protective Orders"). The purpose of Family Code Title 4, entitled "Protective Orders and Family Violence," is to provide an expedited procedure to protect victims of family violence and to reduce the number of deaths and injuries to those victims and to the law enforcement officers

9

charged with handling family disturbances. *E.g.*, *Rodriguez v. Doe*, 614 S.W.3d 380, 385 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Jackson v. Jackson*, No. 01-14-00952-CV, 2015 WL 8940117, at *4 (Tex. App.—Houston [1st Dist.] Dec. 15, 2015, no pet.) (mem. op.); *Roper v. Jolliffe*, 493 S.W.3d 624, 634 (Tex. App.—Dallas 2014, pet. denied)).

Thus, commensurate with Family Code Chapter 84, the timeline applicable to protective order applications under Code of Criminal Procedure Chapter 7A was abbreviated. A trial court was required to set a hearing within fourteen days after an applicant applied for a protective order. Tex. Fam. Code § 84.001. The respondent was entitled to receive notice of the hearing, but if the hearing was scheduled within forty-eight hours after the respondent received notice, the court was required to reschedule the hearing on the respondent's request. *Id.* §§ 82.043, 84.004; *see also see Johnson v. Simmons*, 597 S.W.3d 538, 542-43 (Tex. App.—Fort Worth 2020, pet. denied). Thus, the statutory notice provisions contemplated that a respondent may receive less than forty-eight hours' notice of a hearing and provided additional safeguards should that occur: mandatory rescheduling on the respondent's request. But the fact that a respondent received less than two days' notice of a protective order hearing did not itself bar the court from granting the motion when the respondent failed to attend the hearing without requesting to reschedule it. "A court may render a protective order that is binding on a respondent who does not attend a hearing if the respondent received service of the application and notice of the hearing." Tex. Fam. Code § 85.006(a).[4]

---

[4] The legislature modified section 85.006 effective September 1, 2021 to clarify that Texas Rule of Civil Procedure 107(h) does not apply to default protective orders. As well, the Supreme Court of Texas has modified the comments to Rule 107, also effective September 1, 2021: "Certain default orders, like those in suits for protection from family violence, may be exempt by statute from the ten-day requirement in paragraph (h). *See, e.g.*, Tex. Fam. Code § 85.006."

Dupuy was served with the protective order application and notice of hearing on April 1, 2019 at 12:35 p.m.; the hearing was set for 9:00 a.m. on April 3. Thus, Dupuy received less than forty-eight hours' notice of the hearing and was entitled to a continuance upon timely request. *See* Tex. Fam. Code § 84.004. As noted above, this additional safeguard ensures that a party's due process rights are protected. Dupuy requested a continuance by handing to jail personnel an envelope containing his answer and a motion for continuance, but he did not do so until the date of the hearing, April 3.[5] The trial court did not receive the motion for continuance until

---

[5] Although not argued by Dupuy in his opening brief, an incarcerated pro se litigant's legal instruments are normally deemed filed "at the time the prison authorities duly receive the document to be mailed." *Warner v. Glass*, 135 S.W.3d 681, 684 (Tex. 2004) (per curiam); *accord Ramos v. Richardson*, 228 S.W.3d 671, 673-74 (Tex. 2007) (explaining that an inmate who provides "some measure of proof" that he timely delivered a document to the prison mailbox system should not be penalized if the document is ultimately filed untimely). Here, the certificate of service contained in Dupuy's pleadings states, "The above was served on the State, through the Clerk's office, on April 3, 2019." Section 84.004 has no specific filing deadline for the request for a continuance, but any such request logically would need to be presented to the trial court before or at least at the scheduled hearing. *Cf. City of Houston v. Blackbird*, 658 S.W.2d 269, 273 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd) (trial court did not abuse its discretion in denying unverified motion for continuance that was filed after the date of the hearing plaintiff sought to continue). Thus, even crediting Dupuy the benefit of the so-called prisoner mailbox rule, his motion for continuance was untimely because the record does not show, and Dupuy did not establish with proof, that he delivered the motion for continuance to prison officials before the April 3 hearing began.

More importantly, the motion for continuance was neither verified nor supported by a sworn declaration. *See* Tex. R. Civ. P. 251 ("No application for a continuance shall be heard before the defendant files his defense, nor shall any continuance be granted except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law."). Generally, a trial court does not abuse its discretion in denying a motion for continuance that does not comply with Rule 251. *See, e.g.*, *In re C.F.*, 565 S.W.3d 832, 844 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("When a motion for continuance does not comply with the rules—for example, when the motion is unwritten or unsupported by verified facts—appellate courts generally presume the trial judge did not abuse its discretion in denying the motion."); *Taherzadeh v. Ghaleh-Assadi*, 108 S.W.3d 927, 928 (Tex. App.—Dallas 2003, pet. denied) (explaining that party moving for continuance in the context of a protective order hearing must comply with Tex. R. Civ. P. 251). An inmate may use a declaration in lieu of an affidavit if the declaration meets the requirements of Civil Practice and Remedies Code section 132.001. *Bahm v. State*, 219 S.W.3d 391, 393-94 (Tex. Crim. App. 2007). Section 132.001 requires that the declaration be "(1) in writing; and (2) subscribed by the person making the declaration as true under penalty of perjury." Tex. Civ.

April 8, and Dupuy does not complain that the trial court erred in failing to grant a continuance. He states merely, and incorrectly, that he "timely notified the trial court that he sought a continuance." Because Dupuy does not assign error to the lack of a continuance, we do not consider it as a basis for reversal. *E.g.*, *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) (per curiam) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error.").[6]

The trial court may hear, and thus may grant, an application for a protective order with less than forty-eight hours' notice of the hearing to the respondent. Tex. Fam. Code §§ 82.043, 84.004. The court need reschedule such a hearing only on the respondent's request. As Dupuy does not present argument and authority on this exception in his brief, we overrule the part of his first issue complaining of inadequate notice of the hearing.

In the next part of his argument, Dupuy contends that he "was barred, literally, from the courthouse." We construe this part of his brief to contend that the State, through jail officials, prevented him from appearing at the April 3 hearing.

As appellee notes, Dupuy did not seek a bench warrant so that he could appear at the hearing, nor did he seek to appear through alternative means, such as by

---

Prac. & Rem. Code § 132.001(c). Dupuy did not include any such declaration with the pleadings he mailed on April 3. Thus, his motion for continuance does not comply with Rule 251, and the trial court would not have abused its discretion in denying it on that basis.

[6] In his reply brief, Dupuy asserts for the first time that the trial court erred by refusing to grant a continuance. But a party generally may not raise issues for the first time in a reply brief. *See Sheets v. Autogroup Premier, Inc.*, No. 14-18-00279-CV, 2020 WL 548366, at *2 n.2 (Tex. App.—Houston [14th Dist.] Feb. 4, 2020, no pet.) (mem. op.) (citing Tex. R. App. P. 38.3; *Brown v. Green*, 302 S.W.3d 1, 13-14 (Tex. App.—Houston [14th Dist.] 2009, no pet.)); *HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*, 565 S.W.3d 799, 812 n.10 (Tex. App.—Houston [14th Dist.] 2018, no pet.); Tex. R. App. P. 38.3 ("The appellant may file a reply brief addressing any matter in the appellee's brief.").

telephone or video. Although litigants cannot be denied access to the courts simply because they are inmates, an inmate does not have an absolute right to appear in person at every court proceeding. *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003). It is incumbent on the inmate to request to be present at a hearing. *See, e.g.*, *id.* (detailing factors that trial court should consider when deciding whether to grant a bench warrant, but holding that trial court has no responsibility to independently inquire into the applicability of the factors; instead, inmate bears burden to establish his right to be present); *Gardner v. Tex. Dep't of Crim. Justice*, No. 14-07-00992-CV, 2009 WL 87594, at *2 (Tex. App.—Houston [14th Dist.] Jan. 1, 2009, pet. denied) (mem. op.) ("An inmate requesting a bench warrant must justify the need for his physical presence.").

Dupuy directs us to no record evidence supporting his assertion that the State "barred" him from attending the April 3 hearing, and nothing in our record indicates that Dupuy requested to be present for this hearing.[7] His complaints to the contrary do not show that he was deprived of due process. *Cf. Hunt v. State ex rel. K.C.*, No. 03-11-00352-CV, 2012 WL 3793283, at *2-3 (Tex. App.—Austin Aug. 31, 2012, no pet.) (mem. op.) ("Section 85.006 [permitting the issuance of default protective orders] complies with due process because it requires the court to provide the respondent with notice of the proposed protective order and the time of the hearing where the respondent can object to the order's issuance. Due process requires that Hunt be given the opportunity to be heard, but Hunt waived that right by failing to attend the hearing." (internal citations omitted)).

---

[7] At the hearing on his motion for reconsideration/new trial, Williams's attorney pointed out that Dupuy "knows how to do a bench warrant. He used to be a judge." Although Dupuy objected to these statements, the trial court overruled the objection.

Assuming for argument's sake that the hearing notice to Dupuy was constitutionally deficient for the reason he claims, he has neither argued nor shown harm. Here, Dupuy timely filed a motion for new trial and appeared at the hearing on that motion. The record contains no indication that Dupuy was deprived of an opportunity to be heard at the hearing on the motion for new trial. That hearing was held when the trial court retained plenary power over the protective order. Dupuy had the chance to present evidence refuting Williams's evidence, but he did not do so. Thus, Dupuy was provided a meaningful opportunity to be heard during the hearing on his motion for new trial. *Cf., e.g.*, *Sienna Ranch Invs., LLC v. Waller Indep. Sch. Dist.*, No. 14-20-00241-CV, 2021 WL 3358055, at *5 (Tex. App.— Houston [14th Dist.] Aug. 3, 2021, no pet. h.) (mem. op.) (concluding that appellants received a meaningful opportunity to be heard on their defenses to temporary injunction, even if notice was inadequate, because the trial court heard their motion to reconsider/vacate the temporary injunction); *Anambra State Cmty. in Houston, Inc. (ANASCO) v. Ulasi*, No. 14-16-01001-CV, 2018 WL 1611644, at *2-3 (Tex. App.—Houston [14th Dist.] Apr. 3, 2018, no pet.) (mem. op.) ("Although appellant was not provided with notice of the trial court's intent to dismiss the case for want of prosecution prior to the dismissal hearing, appellant was afforded its due process rights because it did receive actual notice of the dismissal order in time to file a motion to reinstate, and a hearing was held on that motion.").

We overrule Dupuy's first issue.

## C.   No Violation of the Applicable Texas Rules of Civil Procedure

In his second issue, Dupuy argues the trial court reversibly erred by signing a default judgment against him in violation of Texas Rule of Civil Procedure 107(h). This rule provides, "No default judgment shall be granted in any cause until proof of service as provided by this rule . . . shall have been on file with the clerk of the

14

court ten days, exclusive of the day of filing and the day of judgment." Tex. R. Civ. P. 107(h). There is disagreement among the courts of appeals whether this rule applies to protective orders, however. *Compare Johnson*, 597 S.W.3d at 545 (determining that Tex. R. Civ. P. 107(h) does not apply to default family violence protective orders), *with Lancaster v. Lancaster*, No. 01-14-00845-CV, 2015 WL 9480098, at *3-4 (Tex. App.—Houston [1st Dist.] Dec. 29, 2015, pet. denied) (mem. op.) (holding that Rule 107(h) does apply to default family violence protective order; granting bill of review to respondent when record showed return of service had not been on file with the clerk's office for the requisite ten days when order was granted).

We need not decide whether Rule 107(h) applies in this case, however. At the close of the April 3 hearing, the trial court explained, "I have signed your temporary protective order and that will be good until I'm able to sign your lifetime protective order. I have to wait for the return to be on file for ten days." The citation and return were filed on April 3, 2019. The trial court signed the final protective order in this case on April 15, at which point proof of service had been on file for more than ten days. Accordingly, the record shows no Rule 107(h) violation, to the extent the rule applies.[8]

Dupuy also complains in his second issue that he was not served in strict compliance with the State's citation. The citation in our record shows service should be had on:

---

[8] The legislature has modified Family Code section 85.006(a), effective September 1, 2021, to clarify that Texas Rule of Civil Procedure 107(h) does not apply:

> Notwithstanding Rule 107, Texas Rules of Civil Procedure, a court may render a protective order that is binding on a respondent who does not attend a hearing if:
> (1) the respondent received service of the application and notice of the hearing; and
> (2) proof of service was filed with the court before the hearing.

*See* Tex. Fam. Code § 85.006(a) (eff. September 1, 2021). The record reflects that the return of service was on file when the trial court heard Williams's protective order application.

CHRISTOPHER MICHAEL DUPUY
~~SERVE IN COURT 339~~     1200 Baker St 3A2B [handwritten]
~~BEFORE 9AM~~             Houston, TX 77002 [handwritten]
                          SPN 02949359 [handwritten]

Or wherever he may be found

The return indicates that Dupuy was served at 1200 Baker Street, i.e., the Harris County Jail. Because service was achieved in compliance with the citation, this portion of his issue presents nothing for our review.

We overrule Dupuy's second issue.

## D. Dupuy's Remaining Due Process Argument Is Either Waived or Unmeritorious

In issue three, Dupuy contends the trial court committed reversible error "when it rendered a default judgment against Appellant who had timely filed an answer." We begin by noting that Dupuy has inadequately briefed this issue. *See* Tex. R. App. P. 38.1(i). The entirety of the argument section in support of this issue consists of a quote from a case and a string cite of other cases regarding default judgments. Dupuy provides no analysis or application of the law to the facts, such as explaining how traditional default judgment cases are relevant when considering a statutorily authorized default protective order. *See Harrison v. Reiner*, 607 SW.3d 450, 466-67 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (issues inadequately briefed where appellant did not apply law to facts).

Even if we were to consider this issue, it lacks merit. The Family Code authorizes a trial court to "render a protective order that is binding on a respondent who does not attend a hearing if the respondent received service of the application and notice of the hearing." Tex. Fam. Code § 85.006. Here, Dupuy received service of the application and notice of the hearing. Thus, the trial court was permitted to

16

render the protective order in this case regardless whether Dupuy had filed an answer before the hearing.

We overrule Dupuy's third issue.

## E.    No Error in Denial of Motion for New Trial

In his fourth and final issue, Dupuy asserts that the trial court reversibly erred by denying his motion for new trial. Specifically, he asserts that he satisfied the elements of *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). We disagree.

We review a trial court's refusal to grant a new trial for an abuse of discretion, and a trial court abuses its discretion in failing to grant a new trial when a defaulting party meets all three elements of the *Craddock* test. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). A defaulting party moving for new trial must show: (1) his failure to answer or appear was not intentional or the result of conscious indifference but was due to a mistake or accident; (2) the motion for new trial sets up a meritorious defense; and (3) the granting of the motion for new trial will occasion no delay or otherwise injure the plaintiff. *Id.* at 925-26. We address only the second *Craddock* element because that issue is dispositive.

The second prong of the *Craddock* test requires Dupuy to "set up" a meritorious defense in his motion for new trial. *See id.* at 927. "Setting up a meritorious defense does not require proof 'in the accepted sense.'" *Id.* at 927-28 (quoting *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966)). Rather, a motion for new trial sets up a meritorious defense if in it the movant alleges facts that in law would constitute a defense to the plaintiff's claim and supports those facts by affidavits or other evidence providing prima facie proof that the defendant has such a defense. *Id.* at 928.

17

Here, we may not consider Dupuy's assertions in his motion for new trial because that motion was not "supported by affidavits or other evidence providing prima facie proof that the defendant has such a defense," nor was Dupuy's motion for new trial supported by a sworn, or unsworn,[9] declaration. *Id.*; *see also Novik v. Lendr, LLC*, 592 S.W.3d 907, 915 (Tex. App.—Houston [14th Dist.] 2019, no pet.). At the hearing on the motion, Dupuy repeatedly accused Williams of lying under oath. But he did not present any evidence in support of his allegations that Williams fabricated the allegations in her affidavit. Having presented no evidence, Dupuy failed to provide prima facie proof that he had a meritorious defense to the protective order. *E.g.*, *Novik*, 592 S.W.3d at 915. Because Dupuy did not meet all three *Craddock* elements, the trial court did not abuse its discretion in denying Dupuy's motion for new trial.

We overrule Dupuy's fourth issue.[10]

---

[9] *See* Tex. Civ. Prac. & Rem. Code § 132.001 ("Unsworn Declaration").

[10] Dupuy filed a reply brief in which he raises numerous issues he did not present in his opening brief. *See supra* note 6. As noted, and excepting jurisdictional questions, we generally do not address issues raised for the first time in a reply brief and decline to do so here. *See Sheets*, 2020 WL 548366, at *2 n.2; *HMT Tank Serv. LLC*, 565 S.W.3d at 812 n.10. We also do not consider the nearly 1,000 pages of documents Dupuy attached to his reply brief as an appendix. These exhibits are not contained in the reporter's record. *See* Tex. R. App. P. 34.6(a)(1) (exhibits). We may not consider documents attached to an appellate brief that are not part of the appellate record. *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 n.2 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also Guajardo v. Cornwell*, 46 S.W.3d 862, 864 (Tex. 2001) (refusing to consider document attached to petition when it was not contained in the record).

## Conclusion

Having overruled Dupuy's issues, we affirm the protective order.


/s/    Kevin Jewell
       Justice


Panel consists of Justices Jewell, Spain, and Wilson (Spain, J., concurring).